## ALEXANDER M. STEWART et al., Trading as JAMES STEWART & COMPANY, vs. AMERICAN BRIDGE COMPANY OF NEW YORK.

*Action on Contract for Structural Iron Work—Evidence—Opinions of Witnesses as to Amount of Loss Caused by Delay—Admissibility of Written Reports Made by Person Beyond Jurisdiction of Court— Letter and Statement of Account Not an Offer to Compromise— When Sub-Contractor Furnishing Materials Bound by Specifications in Contractor's Agreement—Damages For Delay in Furnishing Materials For Building.*

When a party agrees to furnish to a contractor certain materials to be used by him in the construction of a building, according to designated specifications, evidence of certain "general conditions" sent out by the architects to persons invited to make bids for the erection of the building, and not made a part of the designated specifications, is not admissible in an action against the contractor by the party so furnishing materials, since he had no notice of such conditions and they are not a part of his contract.

In an action to recover a balance due for the structural iron work of a building, when the defendant alleges that it was not delivered at the time called for by the contract, and that this delay caused a loss and extra expense, the evidence of the opinions of witnesses as to what loss or extra cost would be occasioned by such delay is not admissible. It must be proved what loss did actually occur in consequence of the delay that took place.

In an action by a party furnishing to the contractor for the erection of a building the iron work used in it to recover a balance due for the same, the written reports made to the architect of the building, who represented the owner, by his superintendents, in the course of their duty, are admissible in evidence, when these superintendents are not within the State. In such case it is not necessary to take their testimony under a commission.

The purchaser of goods made out a statement of the account between himself and the seller, in which he claimed a certain sum as a deduction from the contract price on account of the seller's failure to supply the goods at the time agreed upon, and sent it to the seller together with a check for the balance of the account, and a letter saying that the check was for the amount due. The seller refused to acknowledge the correctness of the account, or to accept the check in full payment, and he was then told by the buyer that he might apply the check on ac-

count. *Held*, that the statement of account and letter were not an offer to compromise a claim, and that they are admissible in evidence, in an action on the contract in which the buyer claimed a larger set-off than that contained in the statement of account

The plaintiff company, a manufacturer of structural iron work, obtained from the architect of a building about to be erected by the defendants as contractors, the plans and specifications of the building. Plaintiff agreed with the defendants to supply and erect the structural iron work according to the specifications of the architect. After plans so obtained by the plaintiff had been drawn certain changes therein were made by the approved plans which were the basis of the final contract between the defendants and the owner of the building. In an action to recover a balance due for the iron work, the defendants claimed to be entitled to a deduction from the contract price on account of the plaintiff's failure to supply certain articles called for by the approved plans but not by the original specifications, and also on account of plaintiff's delay in furnishing materials. *Held*, that it was proper to instruct the jury that the plaintiff was bound to furnish the iron work according to the approved plans and specifications, unless they find that at the time the contract was made between plaintiff and defendants the latter informed the plaintiff that the plans it had received from the architect were correct, and were to be the basis of the contract, and that the plaintiff was not informed of the changes in the plans before a part performance under the contract, in which case the defendant cannot rely upon any difference between the original plans and the approved specifications.

*Held*, further, that if the defendants did not in due time notify the plaintiff of the change in the specifications, the plaintiff was not bound to furnish any work or material not shown under the plans in its possession.

When a contractor for the erection of a building, who is required to pay the owner a certain sum for each day's delay in its completion after a designated time, is prevented from completing the same at that time solely on account of the failure of his sub-contractor to furnish certain materials at the time agreed upon, and does pay to the owner the stipulated amount for the delay, he is entitled to recover the same from the sub-contractor, who had agreed to furnish the material in accordance with the terms of the specifications.

A party who furnished work and material in addition to those called for by his contract with the defendant, which were accepted by the defendant, is entitled to recover the reasonable value of the same.

*Decided May 15th, 1908.*

Appeal from the Superior Court of Baltimore City (NILES, J.)

*Plaintiff's 6th Prayer.*—If the jury find that at the time the paper writing of June 23rd, 1904, was presented by the defendant's agent to the agent of the plaintiff, the defendant's agent told the plaintiff's agent that he could rely upon certain plans then in his possession, which contained all the necessary data and information to enable the plaintiff to proceed at once to procure the manufacture and the delivery of the articles mentioned, and that the plaintiff's agent, relying upon the said statement, agreed to make the deliveries as mentioned in said paper writing, and if the jury find that the said plans did not contain all the necessary information and data required to enable the plaintiff to proceed at once with the said manufacture and delivery, then, and in that event, the plaintiff is entitled to a reasonable time to enable it to procure the said information in addition to the time mentioned in said paper writing for said deliveries.  (*Granted.*)

*Defendant's 1st Prayer.*—If the jury shall find from the evidance that the plaintiff obtained from the architects certain plans of the structural and ornamental iron work for the Daniel Miller building on or about the 28th day of April, 1904, and that said plans for such work were not adopted in their entirety as the final plans by the architects, but were subsequently and prior to May 27th, 1904, altered and modified, and that the defendants contracted on or about May 27th, 1904, to construct and erect said Daniel Miller building in accordance with the plans so adopted by the architects, and that on or about June 23rd, 1904, Mr. Rowan, representing the defendants and having no knowledge of the plans received by the plaintiff on April 28th, 1904, and Major Ramsay, representing the plaintiff, entered into the arrangement and agreement of June 23rd, 1904, and that Mr. Rowan assented thereto, having in mind the plans finally adopted by the architects and the only plans of which he had knowledge and in accordance with which the contract of the defendants to construct said building was made, and Major Ramsay having in mind said plans of April 28th, 1904, received by the plaintiff from the architects, and shall further find that the plaintiff

received on or about June 28th, 1904, from the defendants copies of the plans so finally adopted by the architects and in accordance with which said building was actually constructed, which plans differed from the plans of April 28th, 1904, by providing for flitch plates and clean-out doors, and required a different width of pockets upon the cast-iron columns and a different width of caps to accommodate large beams or timbers, and that the plaintiff thereafter delivered caps and columns in accordance with the requirement of such plans as received by it from the defendants, without at that time directing the attention of the defendants to the discrepancies and variations between the plans of April 28th, 1904, obtained by it from the architects and those furnished the plaintiff by the defendants on June 28th, 1904; then the plaintiff must be held as having waived said differences and accepted said plans of June 28th, 1904, and is bound by them.    (*Refused.*)

*Defendant's 10th Prayer* (*as amended* ).—If the jury shall find from the evidence that the defendants on the 27th day of May, 1904, entered into a contract with the owners to erect and complete the Daniel Miller building, mentioned in the evidence, by the 1st day of December, 1904, and were required by such contract to pay a stipulated sum of money for each day's delay in the completion thereof, and shall further find that the defendants did not complete the building by December 1st, 1904, and by reason of such failure were required and did pay for such delay the sum of one thousand, three hundred and seventy-five dollars ($1,375), and shall further find that the defendants could and would have completed said building by December 1st, 1904, except solely for the delays occasioned by the plaintiff, if they shall find such delays, then the defendants are entitled to recover from the plaintiff said one thousand, three hundred and seventy-five dollars ($1,375). (*Granted, as amended* ).

*Defendant's 11th Prayer* (*as modified* ).—The defendants pray the Court to instruct the jury as matter of law that the plaintiff, by its undertaking with the defendants, was required to furnish and erect the structural and ornamental iron work

for the Daniel Miller building, "by commencing at once the
preparation of the material and by keeping itself at all times
advised as to the progress of the work of the defendants and
by carrying on a continuous delivery and erection in such
manner as the work may require without delay thereto and as
soon as the building is ready to receive the same and as
directed by the defendants;" and that if the jury shall find
from the evidence that the plaintiff did not so furnish and
erect said structural and ornamental iron work, and by reason
of such failure delayed and hindered the defendants in the
completion of said building, then the defendants are entitled
to recover from the plaintiff for any additional expense and
cost, if any, which the jury may find from the evidence ad-
mitted in this case was incurred by the defendants in the erec-
tion and completion of said Daniel Miller building by reason
of the delays occasioned by the plaintiff's failure to so furnish
and erect said structural and ornamental iron work; provided
the jury shall further find from the evidence that the defend-
ants would not have incurred such additional expense and
cost but for the failure of the plaintiff to so furnish and erect
said structural and ornamental iron work. (*Granted, as
amended.*)

*Court's First Instruction.*—The Court instructs the jury, as
matter of law, that, on the undisputed evidence in this case,
the plaintiffs were bound to furnish the work contracted for
by them and mentioned in the specifications, annexed to the
paper writing offered in evidence and marked "B.B." under
the head of "Structural Iron Work," according to the ap-
proved plans and specifications prepared by Wyatt & Nolting,
and offered in evidence, and marked "Exhibits Defendants
AAA," unless the jury shall further find the following state
of facts, which will hereafter be alluded to in the Court's in-
structions as "Finding A," to wit:

*Finding A.*—"That, at the interview between Major Ramsay
and Mr. Rowan on the 23rd of June, 1904, said Rowan was
apprised of the fact that the plaintiff had received certain plans
from said Wyatt & Nolting, and assured said Ramsay that

those plans were all right, and were the plans referred to in the contract made on said date, and that the plaintiff could at once commence the carrying out on his part of the contract according to the said plans which it then had."

Should the jury find the facts set forth in "Finding A," they may find that the defendant is estopped from setting up any difference between the plans so obtained by the plaintiff from the architects, Wyatt & Nolting, and the plans as finally approved by the said Wyatt & Nolting, unless the jury shall further find the facts which will be hereafter alluded to in the Court's instructions as "Qualification to Finding A," to wit:

*Qualification to Finding A.*—"That a copy of the said approved plans of Wyatt & Nolting was furnished to the plaintiff at such time and under such circumstsnces that the. plaintiff' by the exercise of ordinary prudence and care, such as reasonably careful business men generally exercise in similar transactions, should have known before the respective position of the parties had substantially changed by reason of the past execution of the said contract, that the plans as finally approved by said Wyatt & Nolting were different from the plans that had been obtained from said architects as aforesaid previously to June 23rd, 1904."

*Court's Second Instruction (substituted for defendant's eighth prayer).* The Court instructs the jury that, under the undisputed evidence in this case, the plaintiff agreed to keep itself advised as to the progress of the work of the first party upon the building mentioned in evidence, to commence deliveries and erection of the work to be furnished by them as soon as the building was ready to receive the same, carrying on a continuous delivery and erection in such manner as the work may require, without delay thereto and as directed by the defendants, until the completion thereof in so far as the completion appertained to the material to be furnished by the plaintiff under its contract; and further agreed that all of the material to be furnished by it under its contract should be in strict accordance with the plans and specifications prepared for the same by Wyatt & Nolting, architects, subject to their inspection and approval and satisfactory to the defendants.

And if the jury shall find that the said plaintiff failed to comply with any of the above-mentioned provisions of its contract, and further find:

1st. That solely by reason of such default of the plaintiff, as aforesaid, the defendants were required to paint certain of the wall boxes, for which a charge of $13.75 is made, and shall find such charge to be reasonable for such work done;

2nd. And that solely by reason of such default, as aforesaid, the defendants were required to do certain cutting and patching of walls, for which a charge of $50.80 is made, and shall find such work to have been done, and the charge therefor to be reasonable;

3rd. And that by reason solely of such default, as aforesaid, the defendants were required to procure certain templates, and did make such templates at the cost of the plaintiff, for which a charge of $5.95 is made, and shall find such charge to be reasonable; and

4th. That solely by reason of such default, as aforesaid, the steel beams to support the stair platforms were in the first instance placed at wrong levels or entirely omitted, and thereby it became necessary that said beams should be cut out and replaced at their proper levels; and shall further find that said cutting out, replacing and putting in at their proper levels was done by the defendants, for doing which work so made necessary a charge of $445 is made; and shall further find such charge to be reasonable for the work and labor done; and

5th. That solely by reason of such default, as aforesaid, it became necessary to temporarily enclose the window openings in said fronts with canvas in order to enable the defendants to proceed to the completion of its contract by the laying of permanent floors, for which a charge of $362.55 is made; and shall further find that said charge is reasonable for the material required and the work and labor done in making said temporary enclosures for said windows; and

6th. That by reason solely of such default, as aforesaid, the defendants, in order to enable the owners to occupy said building, were required to supply lumber for and install temporary

platforms at the stair landings, for which said lumber in said temporary stair landings and the work and labor incident to the building of the same a charge of $225 is made; and shall further find that such charge is reasonable for the materials furnished and the work and labor done;

Then the defendants are entitled to recover for each and every of the items above indicated, with reference to which the jury shall so find respectively.

*Court's Third Instruction.*—The Court instructs the jury that, if they shall find from the evidence the facts set forth in the Court's first instruction as "Finding A," and shall not find the facts set forth therein as "Qualification to Finding A," then the plaintiff is not bound to furnish any work or material which may be shown upon the plans in the possession of the defendants, which were not shown on the plans in the possession of the plaintiff on June 23rd, 1904, and alluded to in the conversation between Major Ramsay and Mr. Rowan, as set forth in said "Finding A."

*Court's Fourth Instruction ( Substituted for Plaintiff's Fiftth Prayer.)*—The Court instructs the jury that, if they shall find from the evidence the facts set forth in the Court's first instruction as "Finding A," and shall not find the facts set forth therein as "Qualification to Fnding A," and shall further find that the plaintiff furnished the material specified in the sched-ule attached to the paper writing of June 23rd, 1904, within a reasonble time, and exercised due diligence in the delivery of the same, and carried on a continuous delivery and erection of the material which it had contracted to furnish in such manner as the work required without delay thereto, and as soon as the building was ready to receive the same, and as directed by the defendants, and that the defendants accepted the same, the plaintiff is entitled to recover $27,500, less the payments made by the defendants, if they shall find such payments; and if, in addition to the work and material covered by said schedule, the jury find that the plaintiff furnished other work and material, and it was accepted by the defendants, the plaintiff is entitled to recover the amount charged by the

plaintiff for such alleged extra work; provided the jury find that the charges so made are reasonable, and that the work and material furnished were not included in the schedule of June 23rd, 1904.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*George R. Willis* and *Dallett H. Wilson*, for the appellants.

*John E. Semmes* and *Jesse N. Bowen*, for the appellee.

BURKE, J., delivered the opinion of the Court.

This is the defendants' appeal from a judgment entered against them in the Superior Court of Baltimore City. The declaration contained the common counts only to which the defendants pleaded the general issue pleas, upon which issue was joined. Subsequently, the defendants filed the following additional plea, viz:

That at the time the plaintiff's action was commenced the plaintiff was indebted to them in a large sum of money, growing out of the furnishing of material and work and labor with reference to the erection of the warehouse known as Numbers 28–30–32 Hopkins Place, in the city of Baltimore, towit:

The sum of $ 13.78 for failure to paint wall boxes;

The sum of 50.80 for sundry cutting and patching of walls made requisite by the plaintiff failing to construct its beams and other structural iron work to conform to the plans and specifications;

The sum of 5.95 for making, at the request of the plaintiff, certain templates;

The sum of 687.70 paid to the Chesapeake Iron Works for flitch plates, which the plaintiff had agreed to furnish, and, nevertheless, failed so to do;

The sum of 445.00 for setting steel beams, taking down and resetting the same, including the necessary cutting out and rebuilding in connection with the location of the

channels and beams for the stair land-
ings;

The sum of          7.60 paid Deitrich Bros. for clean-out
doors, which the plaintiff should have,
but did not furnish;

                    ———————
                    $1,210.83
Forwarded, $1,210.83
The sum of      1,375.00 being the amount of liquidated dam-
ages paid by the defendants to the
owners of the building by reason of
their failure to complete the same as
by the contract provided, the entire
delay in so completing said building
having been occasioned by the negli-
gence, default and wilful acts of omis-
sion and commission of the plaintiff;

The sum of       362.55 temporary canvas covering and other
protection to the Hopkins Place ele-
vation, caused by the failure of the
plaintiff to have fronts installed as re-
quired;

The sum of       225.00 cost of putting in temporary stair plat-
forms, on account of the plaintiff's
failure to have permanent platforms
delivered on time;

The sum of     8,000.00 being the additional cost incurred by
the defendants in erecting said build-
ing, by reason of the manner of con-
struction made requisite and the delay
occasioned by the failure of the plain-
tiff to furnish the material when and
as required by the defendants and in
accord with the understanding and
agreement had with the plaintiff; which
said sums amounting in all to

——————$11,173.38, exceeded the damages sustained by
the said plaintiff by reason of the non-performance by the de-
fendants of the said several supposed promises and undertak-
ings in the declaration herein mentioned, and out of which
said sums of money so due and owing from the said plaintiff
to the said defendants, the said defendants are ready and will-
ing and hereby offer to set-off and allow to the said plaintiff,
the American Bridge Company, the full amount of said dam-

ages, according to the form of the statute in such cases made and provided, and claim judgment for such balance as may be found due to the defendants from the plaintiff on said account.

Issue was joined by the defendants upon the traverse of the plaintiff to this plea, and the case proceeded to trial, which resulted, after a great mass of testimony had been taken, in a judgment for the plaintiff for twelve hundred and seventy-five dollars and eighty-two cents ($1,275.82), from which this appeal is taken.    Twenty-one bills of exceptions were reserved by the defendants.    Eighteen of these relate to the rulings of the Court upon questions of evidence, and the remaining three to the action of the Court upon the prayers submitted by the respective parties at the close of the whole testimony.

The exceptions to testmony may be classified and grouped under three general heads, and in this way a separate discussion of them dispensed with; first, the exception to the refusal of the Court to permit the defendants to introduce in evidence the "general conditions" contained in the contract made between the defendants and the owners of the Daniel Miller Warehouse Building which the defendants had undertaken to erect; secondly, the admission in evidence of a certain statement and voucher sent by the defendants to the plaintiff; thirdly, to the exclusion by the Court of the testimony of expert witnesses, testifying as such, to show that the unit cost of labor in handling the timber and brick construction of the Miller Building was increased beyond the normal price paid for such labor by reason of the failure of the plaintiff to deliver the material which was to be furnished by it in the prosecution of the work, with a view of thus establishing a loss or damage, which the defendants alleged they had suffered, and for which the plaintiff was sought to be held responsible under the last item of the defendants' additional plea; fourthly, the admission in evidence of certain original memoranda of superintendents of Wyatt & Nolting, the architects; made at the time, in the course of their duty, and reported daily to their employers as the work progressed—the persons who made these memoranda being out of the jurisdiction of the Court and their handwriting being proven.

It·becomes necessary, in order to ascertain the legal prin-
ciples which should control•the case, to understand the main
and controlling facts disclosed by the record.     On the 27th
of May; 1904, the defendants entered into a contract with the
owners of ground on Hopkins Place, in the city of Baltimore,
for the erection of a large warehouse spoken of in the evidence
as the Daniel Miller Building.     This building was to be
erected in accordance with the approved plans and specifica-
tions prepared by Wyatt & Nolting, who were the architects
for the owners.     The plans for the building were prepared,
and were approved by Mr. E. D. Preston, the Building In-
spector for the city, on June 9th, 1904, and it was upon these
plans that the defendants bid for the erection of the building
was based, and upon which the contract was awarded.     On
the 28th of April, 1904, the plaintiff, being one of the largest
structural steel and iron concerns in the country, had obtained
from the architects a set of plans with a view of submitting a
bid for furnishing and erecting the structural and architectural
iron work for the Miller Building.     Subsequently it did sub-
mit a proposition to the defendants for furnishing and doing
this work, and on June 23rd, 1904, a contract was entered into
between the plaintiff and the defendants by which the plaintiff
agreed to furnish and erect complete the steel and iron work
for the building.

Only such portions of this contract as relate to the issues
raised by the pleadings need be noticed.     The plaintiff agreed;
first, to furnish and erect complete all the cast iron, steel, or-
namental iron, Goetz-bog anchors, rolling steel door, and
everything of a like or kindred nature ·called for in the
specifications under the head of structural iron work, except
metal frames and fire shutters; secondly, to commence at once
the preparation of their material, and at all times keep them-
selves advised as to the progress of the work, and commence
delivery and erection of the south row of columns and bases,
the four rows of columns and bases on Liberty street, the
lintels and pavement beams on Liberty street, within ten days
from the date of the contract, and the remainder as soon as

the building is ready to receive the same, carrying on a continuous delivery and erection, in. such manner as the work may require, without delay thereto, and as directed by the defendants, until the completion thereof, in so far as the completion appertains to the material which was to be furnished under the contract.    In the event of failure of the plaintiff to commence and continue delivery as agreed, subject to the delay of common carriers, notice of such delay to be given the defendants, *the defendants were authorized to purchase such material and employ such additional men as might be required to carry on their work without delay, and charge the expense thereof to the plaintiff ;* thirdly, that all the cast iron, steel and ornamental iron work, mentioned in the contract, should be in strict accordance with the plans and specifications prepared for the same by Wyatt & Nolting, the architects, and subject to their inspection and approval and satisfactory to the defendants; any material delivered or work done failing in these requirements to be immediately removed from the premises by the plaintiff and replaced in a satisfactory manner, at their own cost and expense, without delay to the building; fourthly, that no payment made under the contract should operate as an admission on the part of the defendants that the contract, or any part thereof, had been complied with, or that any detail of the work had been properly performed, in case the fact should be otherwise, or so as to preclude any action for damages against the plaintiff, should the work and materials required not be performed and furnished in a substantial, workmanlike manner and a proper quality, or should the contract not be faithfully executed in every respect.

Attached to the contract was a schedule showing the material the plaintiff was to furnish.    The terms of this agreement were arranged and settled between Henry A. Ramsay, representing the plaintiff, and William A. Rowan, acting on behalf of the defendants.    The agreement was sent to New York to be signed by the proper officer of the plaintiff, and returned to the defendants in Baltimore for their signatures. The contract was signed by the president of the plaintiff com-

pany and returned to the defendants, who declined to execute it, because of certain changes which had been made in the contract by Mr. Ramsay.   These changes have no bearing upon the questions before us, and need not be discussed, as it is conceded that the agreement of June 23rd, 1904, is correctly set out in the record, and is the contract agreed upon by the parties acting through their authorized agents.   The plaintiff, without waiting for the agreement to be signed, began at once the preparation and furnishing of material for the building.

Subsequent to the agreement the plaintiff discovered that the plans upon which its bid was based were not the correct and approved plans in accordance with which the building was to be erected, and that the approved plans differed in some important respects from those in its possession.  The approved plans and specifications, although introduced in evidence, do not appear in the record, and we cannot tell exactly and in all particulars the difference between the two sets of plans; but it does appear that according to the approved plans flitch plates and cleanout doors were to be furnished.  These requirements were not shown upon the plans in the plaintiff's possession at the time it entered into the agreement.   It also appears that by the approved plans, the timbers, which were to go into the wall boxes, were made two inches wider.

Mr. Ramsay testified that on the 23rd of June, 1904, when the contract was made, Mr. Rowan assured him that the drawings which he had received from the architects on the 28th of April, 1904, were correct, and that he relied upon that statement, and that Mr. Rowan further stated that there would be no delay, because the drawings which we had were all right, and that upon this assurance, the plaintiff, under the verbal order of Mr. Rowan, proceeded at once with the work.   This testimony was denied by Mr. Rowan; but that raised an issue of fact for the jury, under proper instructions from the Court as to the legal effect of those statements, if the jury found they were made, upon the rights and obligations of the parties under the contract.    On the 28th of June, 1904. the plaintiff received from the defendants a full set of the approved plans.

With this outline of the main facts in the case before us we will consider the exceptions to the admissibility of the testimony. The refusal of the Court to admit in evidence the "general conditions" which appear in the record is the ruling complained of in the first exception. These "general conditions" were sent by the architects to persons who were invited to bid for the construction of the entire building, and relate to a variety of subjects, and set out with much particularity a great number of obligations to be assumed by the builder to the owners. There is nothing to connect the plaintiff with these conditions. They were not discussed by the parties, and it would be most unreasonable to suppose that the plaintiff intended to assume obligations and to be bound by conditions which have not the remotest bearing upon the subject matter of its contract with the defendants. It had agreed to furnish and erect all the cast iron, steel and ornamental iron work described in the contract in strict accordance with the plans and specifications prepared by Wyatt & Nolting, the architects, and to subject it, under the circumstances, to obligations of the nature specified in these "general conditions" would be an unwarrantable extension of its duty under the contract.

Counsel for the defendants say in their brief: "We cannot find in the reports of our State where this point has been directly passed on, but in the case of *McGregor* v. *Ware Construction Company*, 188 Mo. 619, decided by the Supreme Court of Missouri, the Court there held that the "general conditions" of the specifications are to be taken as a part of any contract entered into by a contractor or sub-contractor, and that said contractor or sub-contractor, as the case might be, must be bound by the provisions thereof;" but the contentions made can find no support in that decision, because the case shows, that the general conditions, which the Court received in evidence, were embodied in and made a part of the contract between the original and sub-contractor. This circumstance clearly discriminates the cases, and deprives that decision of all persuasive authority in this case. Our conclusion, that the "general conditions" cannot be imported into the contract of

June 23rd, 1904, is supported by the principle of the decision in the case of *The Baltimore & Ohio Railroad Company* v. *Stewart*, 79 Md. 487.

The Court admitted in evidence a statement and voucher sent by the defendants to the plaintiff on October 6th, 1906. This is the action complained of in the second, third, and fifteenth exceptions. The contention is that this statement and payment, which the Court admitted, was an offer of compromise on the part of the defendants, and should, therefore, have been excluded. The testimony objected to consisted of the statements prepared by the defendants purporting to exhibit the true state, of the account between the parties, and showing a balance of $3,530.97 due the plaintiff, for which amount the defendants sent a check in full payment. The statement is as follows:

James Stewart & Company,
·Engineers and Contractors,
Pittsburg, St. Louis, New York, Baltimore.
To American Bridge Company, Dr.,
Place of Business—Pittsburg, Pa.
For Supplies or Labor furnished to——Miller Building.
190'.
To contract for iron work erected complete above building. .....28,500.00
*Contra.*
By charges as per bills rendered, 9.85, 3.93, 50.80, 5.95, 687.70,
28.20, 7.60......................................................................    794.03
By Cash, 7–24, 3,600.00; 10–3, 8,400.00; 12–9, 5,600.00; 1–31,
5,200.00................................................................22,800.00
By Demurrage assessed account delays in deliveries and erec-
tion.....................................................................    1,375.00
Check herewith on a-c above contract...............................  3,530.97
Approved, W. A. Rowan.
Received of James Stewart & Co., thirty-five hundred thirty 97-100——
100 Dollars on a-c of the above account.
American Bridge Co. of New York.
W. H. Connell, Treasurer.

This statement and check were accompanied by a letter to the plaintiff in which the defendants stated that the check represented the balance due by them on account of the contract on the Miller Bulding, after deducting charges, previous payment and demurrage of $1,375.00 which was deducted in settlement with the owners. Inasmuch as the defendants by

their additional plea were setting up counter charges amounting to more than $11,000, this statement showing claims aggregating less than $2,200, if admissible, was important evidence.   There can be no doubt that offers of compromise are not admissible.   The rule, as well as the reason upon which it rests, is clearly stated in the case of *Biggs* v. *Langhammer*, 103 Md. 94; but we do not find that the facts bring this statement and voucher within the rule.   It is true that repeated efforts had been made by the plaintiff to have its claim paid. A meeting had been held in April, 1905, looking to an adjustment of this and other claims; but no settlement was reached.   The defendants insisted that they had been subjected to great loss by reason of the plaintiff's failure to perform its contract; the plaintiff contended that it was in no manner responsible for the losses which the defendants claimed to have suffered.   A number of letters passed between the parties in reference to the payment of the claim, the last of which was on the 11th of September, 1905, in which the defendants wrote that "your, Mr. Wells, and other Eastern representatives understand quite fully that it was their work that necessitated the payment by us of penalty, and we are quite ready to make a settlement as soon as we receive proper credit from you."   Afterwards, on October 6th, 1905, they attempted to close the account by sending the statement and voucher of that date.   The plaintiff refused to recognize the statement as correct, or to accept the check in full payment, and was told by the defendants that it might accept it in part payment without prejudice to the charges made.

The elements of a compromise offer are lacking in this transaction.   As we read the record, it simply amounts to this: The plaintiff was asserting a claim in excess of what the defendants claimed to be due, and afterwards a number of futile efforts had been made to adjust the matter, the defendants determined to settle it upon the basis of its own account, and, therefore, sent the statement and check in full payment, and in reply to a letter from the plaintiff, declining to accept the check in full satisfaction, told it, in effect, that it might apply

the check on account if it saw fit, and, to use their own language, "straighten out" the difference between them in some other way.

The fourth, fifth, sixth, seventh, tenth, eleventh, twelfth, thirteenth, fourteenth, and sixteenth exceptions relate to the exclusion of certain opinion evidence on the question of damages, taken subject to exceptions. As appears by the last item of the defendant's additional plea they were claiming the sum of $8,000 for additional costs incurred by them "in erecting said building, by reason of the manner of construction made requisite and the delay occasioned by the failure of the plaintiff to furnish the material when and as required by the defendants and in accordance with the understanding and agreement had with the plaintiff." A great amount of evidence was taken upon this claim, and the additional costs which the defendants claimed to have incurred was capable of reasonably definite and certain ascertainment. They claim to have paid this additional cost, and the evidence shows that they had in their possession memoranda showing the extra cost in some instances, and if they did incur this additional cost the fact should have been established in the ordinary way. The question at issue was, what amount of additional cost, if any, the defendants did in fact incur by reason of the plaintiff's default, and not what it would have caused in the opinion of experts, especially as they were basing their opinions in some important particulars upon an assumed state of facts of which there was no evidence. The testimony, which the Court excluded, was vague, uncertain, and speculative and misleading, and well calculated to have resulted in great injustice to the plaintiff.

The seventeenth exception was taken to the action of the Court in admitting in evidence the reports of certain superintendents of Wyatt & Nolting, made under the circumstances alluded to in an earlier part of this opinion. The defendants contend that the testimony of the persons who made these reports should have been taken under a commission; but manifestly this would have been a useless and unavailing proceeding, as

the reports about which the witnesses would have been examined were not in the possession, or control of the plaintiff; but were the property of Wyatt & Nolting, and the plaintiff had no power to produce them before a commissioner in another jurisdiction. The Court, under the authority of the case of *Heiskell* v. *Rollins*, 82 Md. 14, and other cases in this State, was clearly right in admitting these reports.

The eighteenth exception was taken to a question asked the witness Stringer about the interview between the parties in the case which took place in Baltimore in April, 1905. We see no objection to this question, or to the answer of the witness, and, as the exception was not noticed in the brief of counsel, or in their argument, we presume it was abandoned.

This brings us to the consideration of the action of the Court upon the prayers which is the subject of the nineteenth, twentieth and twenty-first exceptions. The instructions given by the Court need not be particularly discussed in this opinion, but the reporter is requested to set them out in the report of the case. The principal and practically the only legal question of any moment in the case is this: Was the plaintiff bound under its contract of June 23rd, 1904, to furnish and erect those items of cast iron, steel, and ornamental iron work called for by the approved plans which did not show upon the plans in its possession at the time the contract was made? The Court instructed the jury that the plaintiff was so bound; unless the jury found "that, in the interview between Major Ramsay and Mr. Rowan on the 23rd of June, 1904, said Rowan was apprised of the fact that the plaintiff had received certain plans from Wyatt & Nolting, and assured said Ramsay that those plans were all right, and were the plans referred to in the contract made on the said date, and that the plaintiff could have at once commenced the carrying out on his part of the contract according to said plans which it then had;" and the Court further told the jury that the plaintiff would be bound by the approved plans of Wyatt & Nolting, notwithstanding they found that Mr. Ramsay made such statements to Mr. Rowan, if the jury further found "that a copy of said

approved plans of Wyatt & Nolting was furnished to the plaintiff at such time and under such circumstances that the plaintiff, by the exercise of ordinary prudence and care, such as reasonably careful business men generally exercise in similar transaction, should have known before the respective position of the parties had substantially changed by reason of the past execution of the said contract, that the plans as finally approved by Wyatt & Nolting were different from the plans that had been obtained from said architects as aforesaid previously to June 23rd, 1904."

This is the legal principle upon which the first and third instructions of the Court is based, and is the underlying principle of the defendant's second and third prayers, as modified by the Court.    We think the legal principle stated in these instructions is sound and evidently just; because, if such assurances were made by Mr. Rowan, it would be a fraud upon the plaintiff's rights to permit the defendants to set up any difference between the two plans, unless the jury found the qualifying facts stated by the Court, in which event the plaintiff should be estopped to insist that they were not bound by the approved plans. . These instructions gave the jury a correct guide for dealing with the charges for flitch plates, cleanout doors, and other items shown upon the approved plans and which did not appear upon the plans in the possession of the plaintiff on June 23rd, 1904, and for the costs of providing such articles the defendants had made claim in their additional plea.    All the other charges for which a credit is claimed in that plea, except the last item, are fully and clearly dealt with in the Court's second instruction.

The Court's fourth instruction deals with the extra charges included in the plaintiff's account, and we see no objection to it.    The defendants' tenth prayer, as modified, states clearly and correctly the conditions of fact under which the defendants would have a right to recover the $1,375 paid as a penalty to the owners; and their eleventh prayer, as modified by the Court, correctly states the conditions under which the defendants should be allowed the additional cost incurred by

them by reason of any failure by the plaintiff to perform its contract.

We do not deem it necessary to discuss the prayers submitted by the defendants, because, from a careful consideration of the whole record, we are of the opinion that the case was fairly submitted to the jury under the instructions granted.

*Judgment affirmed with costs above and below.*