WILLIAM F. KLINGENSMITH, INC. *v.* DAVID H. SNELL LANDSCAPE CONTRACTOR, INC.

[No. 355, September Term, 1971.]

*Decided May 19, 1972.*

The cause was argued before HAMMOND,█ C. J., and BARNES, FINAN,█ SINGLEY and SMITH, JJ.

*Branko Stupar* for appellant.

No brief filed on behalf of appellee.

SMITH, J., delivered the opinion of the Court.

This is a dispute between a general contractor, appellant William F. Klingensmith, Inc. (Klingensmith), and its subcontractor, appellee David H. Snell Landscape Contractor, Inc. (Snell), on a job involving the construction of a playground at South Capitol and I Streets, S.W., in the District of Columbia.

When Klingensmith paid Snell only $11,125.04 of a $16,500.00 contract price for landscaping, Snell sued for the balance of $5,374.96. Klingensmith brought a counterclaim contending that it had incurred liability to the government by virtue of non-performance by Snell of its contract with Klingensmith. The trial judge (Shearin, J.) entered judgment in favor of Snell for the full amount it claimed. We shall remand the case without affirmance or reversal under Maryland Rule 871 for further proceedings on the issue of damages.

The contract between the parties was in the nature of a letter to Snell on Klingensmith's printed form advising that it accepted Snell's "estimate * * * to Furnish material and labor to complete all Plant Material and Planting Work on the Construction of Playground at Randall Recreation Center * * * in accordance with the plans and specifications therefor prepared by National Park Service, Dept. of the Interior Architect, which [Snell had] examined, namely Specs for Landscaping and Construction of Playgrounds at Randall Recreation Center dated 26 May 1967; Drawings NCR 69.484-61 sheets 1 thru 10; Addendums 1 thru 3." Snell signed acknowledging receipt of that acceptance.

On the subject of payment, the contract said:

"Payments of the above contract price are to be made as follows: 90% of work satisfactorily completed on or before the 20th of the following month. Remaining 10% upon acceptance of government completion."

The contract had in it the comment that the "estimate [was] accepted with the express understanding that [Snell would] strictly comply with the terms and conditions [t]hereinafter set forth."

In its declaration Snell said the contract was not fully performed on its part, stating that one large red oak tree was not installed and that items which did not meet contract specifications were yet another large red oak tree, five dogwood trees and two hawthorn trees. It claimed those items were "the difference between full and substantial performance by Plaintiff" of the contract. It is conceded that the contract of Klingensmith with the National Park Service was terminated. Snell claimed this termination made impossible further performance by it.

Klingensmith filed a counterclaim based upon the failure of Snell to plant 29 red oaks and its "not performing in accordance with plans and specifications prepared by the National Park Service, Department of the Interior,"

as a result of which Klingensmith said it "was charged $9680.00 for the replacement and planting of dead trees, bushes and plants." The counterclaim was dismissed.

Klingensmith sees four areas in which the trial court erred, (1) "when it found that the contract between the parties consisted of three documents not including the specifications between [Klingensmith] and the U. S. Government," (2) "as a matter of law when it found that the reference in the agreement between the parties to the specifications for landscaping and construction of the playground * * * included only the contents of [Snell's] Exhibit No. 2," (3) "in finding that [Snell] substantially performed the contract in that it was based on numerical quantities and not value," and (4) "when it found that there was no time limit within which the contract was to be performed." Somewhat obliquely it adds a fifth point when it concludes its brief with a request "that the case be remanded in order that appellant may litigate its counterclaim based on all material and relevant evidence that was erroneously excluded." We shall not consider such a fifth point, however, because nowhere in its brief does Klingensmith contend that the trial judge erred in dismissing the counterclaim at the end of the whole case and it did not print as a part of its record extract that portion of the proceedings.

## I and II

Both of these points are concerned with the same subject, alleged error on the part of the trial judge in refusing to admit into evidence the contract between Klingensmith and the U. S. Government to which Snell was not a party. He found the contract between Klingensmith and Snell consisted of the letter we have mentioned and the items referred to in it which we also mentioned, all of which were in evidence.

In support of its position that the trial court erred in making its finding as to what constituted the contract, Klingensmith cites *Stewart v. American Bridge Co.,* 108 Md. 200, 69 A. 708 (1908). We do not see much comfort

for Klingensmith there. That was a controversy between the owner of a building and the contractor. One point of argument to our predecessors was the refusal of the trial court to admit into evidence the "general conditions" sent by the architects to persons who were invited to bid for the construction of the entire building. These related to a variety of subjects. They set out with much particularity a great number of obligations to be assumed by the builder to the owner. The Court said:

> "There is nothing to connect the plaintiff with these conditions. They were not discussed by the parties, and it would be most unreasonable to suppose that the plaintiff intended to assume obligations and to be bound by conditions which have not the remotest bearing upon the subject matter of its contract with the defendants. It had agreed to furnish and erect all the cast iron, steel and ornamental iron work described in the contract in strict accordance with the plans and specifications prepared by Wyatt & Nolting, the architects, and to subject it, under the circumstances, to obligations of the nature specified in these 'general conditions' would be an unwarrantable extension of its duty under the contract.
>
> "* * * Our conclusion, that the 'general conditions' cannot be imported into the contract of June 23rd, 1904, is supported by the principle of the decision in the case of *The Baltimore & Ohio Railroad Company v. Stewart*, 79 Md. 487."
> *Id.* at 214-15.

In *Baltimore & O.R.R. v. Stewart*, 79 Md. 487, 29 A. 964 (1894), cited in *Stewart,* Stewart had entered into a contract with a railroad company for building a bridge. The memorandum said, "Baltimore and Ohio specifications to govern." In the railroad's regular form of construction contract there was a provision that the company might "at any time, suspend the execution of, or

annul, the contract, upon giving_____days' notice, without being liable for any loss or damage to the contractors." Stewart had signed such a contract with the railroad some five years before. The company contended that it was entitled to cancel Stewart's contract. Chief Judge Robinson said for our predecessors:

> "It can hardly be contended that any such right on the part of the defendant can be implied from the words 'Baltimore and Ohio specifications to govern.' The term 'specifications' as thus used in contracts of this kind, ordinarily means a detailed and particular account of the structure to be built, including the manner of its construction, and the materials to be used. And the words 'Baltimore and Ohio specifications to govern' would in themselves be construed as meaning that the parties to the contract were to be governed, as to such matters, by the specifications to be found in the regular form of construction contracts used by that company. Nor is it pretended there was any mutual agreement or understanding, outside of the written contract in regard to this point." *Id.* at 497.

In further discussing the matter he pointed out that the chief engineer of the railroad company said that Stewart was familiar with the form of contract, that the regular form of contract was recognized by the engineer and he assumed it was recognized by Stewart "in their dealings during the progress of the work." The Court said:

> "Col. Douglas [the chief engineer] no doubt meant by the words 'Baltimore and Ohio specifications to govern,' not only the specifications, but all the conditions of the regular form of the contract used by the company, so far as applicable, and he assumed that the plaintiffs so understood these words. The latter, however, are in no manner bound by the assumptions or

belief of the witness. They are bound by the contract itself, construed by the same rules of law which govern all other contracts. * * * So, it does not seem to us that there was any evidence from which the jury could find that by the words 'Baltimore and Ohio specifications to govern,' that the parties meant to import into the contract the reservation, to be found in the regular construction contracts of the company, of the right to annul the contract at its pleasure, without incurring any liability to the plaintiffs." *Id.* at 498-99.

There was no testimony presented in this case from any source indicating that the parties were to be governed by the entire contract between Klingensmith and the government. The attempt to put the government contract into evidence came through a witness who was an employee of the government and had no connection with Klingensmith. The contract between Klingensmith and Snell does not by its terms state that the entire contract is made a part of the contract between Klingensmith and Snell. Essentially, what was here required was a determination as to what constituted the contract between the parties. *Cf. Jones v. Calvin B. Taylor Banking Co.*, 253 Md. 430, 439, 253 A. 2d 742 (1969). There clearly was evidence from which the trial judge could determine, as he did determine, that the contract between the parties consisted only of the memorandum to which we have previously made reference and those parts of the government contract specifically mentioned in that memorandum. We cannot say that he was in error. Therefore, the contentions of Klingensmith on this point must fall.

Klingensmith points out that under its contract with Snell work was to be completed "to the satisfaction of the owner and said Architect." In the court's opinion it is stated:

"The Plaintiff has freely conceded and said during his own case that certain specifications

of the contract had not been fully complied with; that certain of the materials, namely, one large red oak tree, did not meet the contract specifications because its top was broken out; one large red oak was not installed by the Plaintiff; that five dogwood trees did not meet the contract specifications because they were too small and two hawthorn trees did not meet the contract specifications because they were too small."

Klingensmith then quotes the next succeeding two paragraphs of the opinion omitting the part we have placed in brackets and emphasizing the italicized portion:

"It appears further from the evidence that there came a time in June of 1968 when there was a purported final inspection of the work done by the Plaintiff and, following that, a demand by the government and by the Defendant that the corrective work which was conceded to be required by the contract (and other work not conceded to be required by the contract) be done prior to October 1, 1968.

"[In the contract between the parties to this proceeding there is no time limitation within which the work was contracted to be performed.] The contention of the Defendant in this case that the Plaintiff had bound itself to perform when and as required by the contract officer involved on the government's behalf *is not borne out by the facts or by the law.*"

Klingensmith then cites Maryland cases having to do with inspection and from that attempts to make an argument that these are grounds for admission of the contract between Klingensmith and the government, stating that "under the agreement, the Government's specifications in their entirety were binding upon [Snell] and it was error to admit only a part of them. Both by incor-

poration into the agreement and by submitting himself to the satisfaction of the Government who relied on their specification in determining acceptance, [Snell] was bound by those deleted specifications, and they should have been admitted into evidence." It does not follow that because the work was to be completed to the government's satisfaction that the contract between the government and Klingensmith was a part of the Snell-Klingensmith contract.

As a matter of fact, if we found that the trial judge did err in not admitting the government contract, we would not reverse unless there were prejudicial error. *Master Royalties v. Balto. City,* 235 Md. 74, 96, 200 A. 2d 652 (1964), and *Hawk v. Wil-Mar, Inc.,* 210 Md. 364, 375, 123 A. 2d 328 (1956). The burden of showing prejudice as well as error is upon the appellant. *M. A. Realty v. State Roads,* 247 Md. 522, 527, 233 A. 2d 793 (1967). Klingensmith has not seen fit to reproduce in the record extract anything from that contract other than what might be called a "face sheet" setting forth the contractor, the date of the contract, the amount involved, that work was to be started within 10 calendar days after receipt of notice to proceed and to be completed within 150 calendar days after such notice, and reference to specifications and drawings which are precisely the same specifications and drawings referred to in the memorandum between Klingensmith and Snell together with the agreement that the government and Klingensmith agreed to perform the contract "in strict accordance" with a standard form of government contract. As long ago as 1948 Judge (later Chief Judge) Henderson in *Platt v. Wilson,* 191 Md. 371, 373, 62 A. 2d 191 (1948), said for the Court that we would not undertake to pass upon testimony contained in the transcript, but not printed in "an appendix to the brief." In *State Roads Comm. v. Sharper,* 231 Md. 411, 413, 190 A. 2d 647 (1963), it was pointed out that Maryland Rule 828 b 1 specifies that the printed extract *shall* contain such parts of the record reasonably necessary for the determination of questions presented on ap-

peal and that this is a mandatory requirement. Other, more recent, statements to the same effect are numerous. Claiming error in such a matter without printing the contract is in the same category as complaining because of the exclusion of testimony of an expert witness without a proffer as to what that witness would have said as in *M. A. Realty*. Klingensmith has failed to meet its burden of proof of prejudicial error which becomes a second reason for rejecting its contentions relative to the admissibility of the contract.

### III

There was contention by Klingensmith that Snell failed to plant 29 oak trees included in the specifications. The trial judge said relative to those trees:

> "The Court finds, therefore, that the, I believe, twenty-nine trees which were shown, according to the evidence, on the drawings but not included in the plant list were not embraced in the contract between the parties.
>
> "In further support of that view counsel has cited and relied upon subsection J of Plaintiff's Exhibit No. 2 appearing at the bottom of page 2B-4 which reads as follows:
>
> > 'Plant Materials: Plants shall be those specified in quantities shown on the plant list on the drawings, and as follows:'
>
> and thereafter describing them as to quality, size and measurements and so on.
>
> "The Court further finds that the evidence bears out the contention of the Plaintiff that in the numerical sense, at least, the vast majority or vast bulk of plants, bushes, trees, et cetera, embraced within the plant list to which the contract is limited were in fact planted."

Klingensmith has not printed as a part of his record extract any testimony or documentary evidence to show that the disputed 29 oak trees were properly a part of

the contract. Accordingly, it cannot be said that the determination of the trial judge that they were not a part of the contract is wrong.

With the oak trees eliminated from the contention, then the deficiencies of Snell are confined to the items mentioned in its declaration to which we have previously alluded, a large red oak tree which did not meet contract specifications because its top was broken out, a large red oak tree not installed, and five dogwood and two hawthorn trees which did not meet contract specifications because they were too small. On those deficiencies the trial judge said:

> "In respect of the admitted deficiencies in performance, the Court finds that they do not constitute a major or substantial portion of the work contemplated and the materials contemplated to be supplied under the contract.
>
> "The Court finds, further, that the principal dispute, after the inspection in June of 1968, as to the doing of that work admittedly required by the contract was as to the time for doing it.
>
> "The Plaintiff has testified, based on his experience and his knowledge of practices in the trade and upon the standards generally applicable to the nursery business, that it was bad nursery practice, because of the prospect of fatality, to plant the trees prior to November and, consequently, he assigns this as justification for his refusal to comply with the government's demand that it be done by October 1st.
>
> "Bearing in mind, and in reliance upon, his obligation under the specifications (about which there appears to be no dispute) that if these trees or other plants were planted and died, or did not survive, he would be obligated to replace them a second time; subsection H of the specification, Plaintiff's Exhibit No. 2, provides:

'(1) All lawns and planting shall be guaranteed for a period of one year (two growing seasons) except that all trees of three inch caliper and larger shall be guaranteed for two years. All lawns and planting shall be alive and in satisfactory growth at the end of the guarantee period.

'(2) Replacements: At the end of the guarantee periods, inspection will be made by the contracting officer. The contractor shall remove and replace any plant required under this contract that is dead or not in healthy condition.'

"The Court finds as a matter of fact and law, having due regard for the contract between the parties, that the Plaintiff was justified in declining to plant the materials or replace the materials (which, admittedly, he was ultimately required to replace) at the time or within the time demanded by the agreement and by the Defendant."

What is or is not substantial performance of a contract is a question of fact to be determined by the trier of facts in the light of the circumstances of each case. *Pleasant Place, Inc. v. Levinson*, 260 Md. 279, 290, 272 A. 2d 35 (1971); *Evergreen Amusmt. Corp. v. Milstead*, 206 Md. 610, 621, 112 A. 2d 901 (1955); and *Speed v. Bailey*, 153 Md. 655, 661-62, 139 A. 534 (1927). There were facts here from which the trial judge could conclude, as he did conclude, that there was substantial performance. We can not say his determination was clearly erroneous. Maryland Rule 886.

The difficulty we see in the case is on the issue of damages. The trial judge said:

"[T]he Court further finds that the defendant has not availed itself of the opportunity and the right to proffer relevant, material and competent evidence as to what would have been the

fair and reasonable value of completing that portion of the work left unfinished through the default in the contract.

"There having been no such evidence produced, there is no deduction which the Court may properly and rationally make from the contract price itself for such unfinished work.

"Accordingly, the Court finds that the plaintiff in this case is entitled to the balance of the contract price which has not been paid and, as the Court understands the position of the parties, there is no dispute between them as to how much has been paid and, of course, the contract itself prescribed what the total amount to become due and payable was. Accordingly, the Court finds that the plaintiff is entitled to judgment in its favor and against the defendant in the amount of five thousand three hundred seventy-four dollars and ninety-six cents, which is the balance remaining after the deduction of the amounts paid to the plaintiff by the defendant for his performance under the contract."

In *Spence v. Ham*, 163 N. Y. 220, 57 N. E. 412 (1900), the Court of Appeals of New York stated the rule:

"He who relies upon substantial as contrasted with complete performance must prove the expense of supplying the omissions, or he fails in his proof, for he cannot recover for full performance when a part of the contract is still unperformed. The doctrine of substantial performance necessarily includes compensation for all defects, which are not so slight and insignificant as to be safely 'overlooked on the principle of *de minimis non curat lex.*' (*Van Clief v. Van Vechten*, [130 N. Y. 571, 29 N. E. 1017 (1892)].) Unsubstantial defects may be cured, but at the expense of the contractor, not of the owner. The contractor cannot recover the en-

tire contract price when defects or omissions appear, for he must show not only that they were unsubstantial and unintentional, but also the amount needed to make them good, so that it can be deducted from the contract price and a recovery had for the balance only. This is an essential part of substantial performance, and hence the proof should be furnished by the one who claims substantial performance." (citing authorities.) *Id.* at 226.

To like effect *see* 3 *Sutherland on Damages* § 711, at 2676 (4th ed. Berryman 1916) and 13 Am. Jur. 2d *Building and Construction Contracts* § 121 (1964). Prof. Corbin in 3A *Corbin on Contracts* § 710 (1960), concedes this is the majority rule, although he criticizes the rule. In *Hammaker v. Schleigh,* 157 Md. 652, 669, 147 A. 790, 65 A.L.R. 1285 (1929), our predecessors said, "While the weight of authority permits a recovery upon the contract on proof of a substantial performance, the full contract price cannot be recovered, unless the owner has accepted the work done as a complete performance." There was no such acceptance here.

We shall remand the case without affirmance or reversal under Maryland Rule 871 for a determination as to the cost of the work which was not done. The court will bear in mind the comment in 2 *Sedgwick Measure of Damages* (9th ed. 1912) :

"§ 367 **Substantial performance.**

\* \* \*

"The true doctrine appears to be that recovery can in no case exceed the contract price less proper allowance for the defective performance; nor on the other hand can it exceed the benefit conferred. Since the plaintiff has not exactly performed his contract he cannot justly claim the benefit of any profit that would have come to him by performing it; and on the other hand the defendant is entitled to be left

in no worse position than he would have occupied had the contract been performed, and therefore should be held to pay no more than the contract price less the allowance for non-performance." *Id.* at 1330.

*See also* the measure of damages as set forth in *Hammaker* at page 670 of 157 Md.

### IV

Klingensmith objects because the trial judge found that there was no time limitation in the contract between Klingensmith and Snell, stating that the court was "ignoring" the memorandum we previously quoted which said "in accordance with the plans and specifications therefor prepared by * * * Dept. of the Interior Architect * * * and to the satisfaction of the * * * said Architect." It says:

> "The contract between the appellant and the Interior Department which was incorporated by reference into the agreement between the parties here clearly states that the planting deadline as extended was October 1, 1968."

citing as authority for the statement the face sheet of the construction contract printed in the record extract which the trial judge declined to admit into evidence. The only reference to time appearing there is the provision that work was to be started within 10 calendar days after the date of receipt of notice to proceed and to be completed within 150 calendar days after the date of receipt of notice was received. The record extract is silent as to when notice to proceed was given. We have previously pointed out that the contract between the parties did not incorporate by reference the contract of Klingensmith with the government. It was silent as to a completion date. Therefore, the trial judge did not err.

> *Remanded for further proceedings without affirmance or reversal; appellant to pay the costs.*