KAPILOFF *v.* LOCKE ET AL.

[No. 14, September Term, 1975.]

*Decided December 22, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and ELDRIDGE, JJ., and reargued before

MURPHY, C. J., and SINGLEY, SMITH, DIGGES and ELDRIDGE, JJ., and CHARLES E. ORTH, JR., Chief Judge of the Court of Special Appeals and JAMES C. MORTON, JR., Associate Judge of the Court of Special Appeals, specially assigned.

Argued and reargued by *Marvin H. Schein*, with whom was *Stanley Lustman* on the brief, for appellant.

Argued and reargued by *James J. Dawson*, with whom were *Morton A. Sacks* and *Cable, McDaniel, Bowie & Bond* on the brief, for appellees.

ELDRIDGE, J., delivered the opinion of the Court. SMITH and ORTH, JJ., dissent and filed a dissenting opinion at page 474 *infra*.

In this case we are concerned with whether the admission into evidence of two letters violated the hearsay rule, and, if so, whether the error was prejudicial.

Grinnell W. Locke and Richard N. Jackson, Jr., partners doing business as Locke and Jackson, Architects, entered into a contract with The Equitable Trust Company of Baltimore, Maryland, to perform certain architectural services in connection with the construction of a proposed office building to be located at 200 W. Cold Spring Lane in Baltimore. The contract set forth a formula by which the compensation due Locke and Jackson for their services would be computed.

On June 26, 1964, The Equitable Trust Company, with the consent of Locke and Jackson, assigned all of its "rights, interests and privileges" in the contract with Locke and Jackson to Dr. Bernard Kapiloff, upon the same terms and conditions as set forth in the contract, and Dr. Kapiloff agreed to assume the obligations and liabilities of The Equitable Trust Company under the original agreement. Subsequently, however, The Equitable Trust Company apparently agreed to pay for a portion of the architectural services.

In July 1964 Locke and Jackson prepared plans and specifications for the proposed building and entered,

together with Dr. Kapiloff, into a contract for the construction of the building with Morrow Brothers, Inc. Construction of the building was subsequently begun, and on June 17, 1966, Locke and Jackson wrote to Dr. Kapiloff that, with the exception of several items, the structure was finished. They recommended that he "accept the building as complete." On July 6, 1966, Locke and Jackson sent an invoice to Dr. Kapiloff stating a balance of $4,679.53 due them. Dr. Kapiloff refused to pay the balance owed, claiming that the building was inadequately constructed and that the architectural services were negligently performed.

Locke and Jackson filed suit in the Superior Court of Baltimore City, seeking recovery for the balance due under the contract. Thereafter, Dr. Kapiloff brought suit against Locke and Jackson in the same court, claiming negligence and breach of contract, and alleging that Locke and Jackson failed to furnish adequate designs and specifications for the building, and that the architects did not properly inspect the building site to insure that construction was in accordance with the terms and specifications of the contract. The two cases were then consolidated. A jury verdict was rendered in both cases in favor of Locke and Jackson, who were awarded $7,012.74. From those judgments Dr. Kapiloff has taken these appeals.[1]

The only issue in these appeals concerns the introduction into evidence of carbon copies of two letters, plaintiff's exhibits 9 and 10, during the direct examination of Mr. Locke, over the objections of counsel for Dr. Kapiloff that the letters were unauthenticated and were hearsay. Both letters were addressed to Dr. Kapiloff, and were purportedly written by Mr. W. A. Koerber, a vice president of The Equitable Trust Company, with notations that carbon copies were sent to Locke and Jackson. The first letter stated (exhibit 9, dated July 13, 1966):

---

**1.** Since the appeals were taken prior to January 1, 1975, initial appellate jurisdiction over the matter was in this Court rather than the Court of Special Appeals. Code (1974), §§ 12-307 (b) and 12-308 of the Courts and Judicial Proceedings Article.

"Dear Dr. Kapiloff:

"On July 6, 1966, Locke & Jackson forwarded to you the final requisition covering the balance of $10,806.89 due Morrow Bros., Inc. We urge you to sign this requisition and send it to us so that we can close this account.

"I enclose a list of concessions that have been made by us which will total $130,757.75 over a twenty-year period, or $6,540.00 per year. This amount is in addition to the amount of rent quoted in the original agreement signed by you and ourselves. In addition to our concessions, Morrow Bros. granted you a $5,000.00 deduction to cover any corrections needed for the offices on the second floor.

"If you will recall, Morrow Bros. did not want to continue the construction of the building from the very start and, at that time, we assured them that we would stand behind the contract and see that they were paid promptly.

"We also think you should pay Locke & Jackson the balance of $4,679.53 that you owe them. We have promised to pay them $16,382.10 and your portion is only $7,179.53 which includes plans for the second floor. After all you could hardly have plans for a three story building prepared for the amount you are obligated to pay.

"We granted the enclosed list of concessions due to certain delays, omissions and errors that may have been made by the architects and the contractors. It is our opinion that you have been amply repaid by us for any errors that may have occurred.

"We urge your co-operation and request that you promptly sign this final requisition for $10,806.89.

> Sincerely yours,
> /s/ W. A. Koerber
> Vice-President"

The second letter was as follows (exhibit 10, dated December 31, 1964):

"Dear Dr. Kapiloff:

"When John Luetkemeyer and I visited you, he asked if you would be satisfied to pay $5,000.00 toward the architects' fees. At that time, he had no idea that the fees totaled $20,974.56. If he had known the amount of the fees, he would have proposed a payment of 50% of the total.

"I enclose certain papers listing the fees together with a letter from Locke and Jackson. You can see that we paid them $5,149.73 on April 7, 1964. We are also paying them as of this date $7,037.46, which will make a total of $12,187.19 paid by us.

"It is our opinion, that you should pay Locke and Jackson at this time $6,179.53 representing $5,000 agreed to by you, plus $1,179.53. This additional charge represents the revising of the drawings to eliminate the main stair, revise the rear stairway and add a fire escape. When John Luetkemeyer proposed a payment by you of $5,000.00 this additional charge was not considered nor expected at that time. Due to the changes, it gives you more rentable square footage on the second and third floors.

"I sincerely hope that you and your family had a nice trip and that you have a happy and prosperous New Year.

Very truly yours,<br>
/s/ W. A. Koerber<br>
Vice President"

On appeal, Dr. Kapiloff contends that these letters were inadmissible because: (1) they were out of court statements offered to prove the truth of the matters asserted therein, and therefore they were hearsay; and (2) there was no

"attempt to prove their authenticity or genuineness." The erroneous admission of the letters, Dr. Kapiloff argues, was "extremely prejudicial" because it "improperly influenced the jury into believing that it was Dr. Kapiloff who had been getting the bargain 'deal' and that it was he who was acting unreasonably by withholding monies due Locke and Jackson."

Ordinarily, of course, out of court statements offered for their truth are inadmissible as hearsay, absent circumstances bringing the statements within a recognized exception to the rule excluding hearsay evidence. *Smith v. Jones,* 236 Md 305, 312, 203 A. 2d 865 (1964); *Morrow v. State,* 190 Md. 559, 561, 59 A. 2d 325 (1948); *Myers v. State,* 137 Md. 496, 501, 113 A. 92 (1921); *Thomas v. Owens,* 28 Md. App. 442, 346 A. 2d 662 (1975). As stated by McCormick, *Evidence* § 246, 584 (2d ed. 1972):

> "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."

The mere fact that the statement is reduced to writing does not change its character as hearsay, or bring it within an exception to the hearsay rule. *Heil v. Zahn,* 187 Md. 603, 608, 51 A. 2d 174 (1947).

In this case the letters purportedly written by Mr. Koerber, exhibits 9 and 10, were clearly inadmissible hearsay. The letters were offered to prove the truth of the matters asserted, namely, that Dr. Kapiloff "owed" money to Locke and Jackson for architectural services performed. The letters suggested that the services which Dr. Kapiloff received were worth more than Dr. Kapiloff was obligated to pay. The statements contained in the letters were unsworn to by Mr. Koerber, and he was not available for cross-examination. No basis exists for the admissibility of the letters under any exception to the hearsay rule. The documents, which contained the opinions and conclusions of

the author, do not reveal any special indicia of reliability and trustworthiness. *Cf. Morrow v. State, supra; Thomas v. Owens, supra.* The trial court should have sustained the objection to the admissibility of both letters.[2]

Locke and Jackson contend, however, that even if the letters were inadmissible as hearsay, their admission was not prejudicial in light of the other testimony and exhibits introduced during the five day trial. It is, of course, true that the erroneous admission of evidence will not justify reversal unless the complaining party can show that the admission was prejudicial to him. *Klingensmith v. Snell Landscape,* 265 Md. 654, 662, 291 A. 2d 56 (1972); *McKay v. Paulson,* 211 Md. 90, 126 A. 2d 296 (1956). However, it is also clear that this Court will not hesitate to reverse where hearsay evidence is erroneously admitted and prejudice is shown. *Smith v. Jones, supra,* 236 Md. at 312; *Heil v. Zahn, supra,* 187 Md. at 609. The burden of proving prejudice in a *civil* case is on the complaining party, here the appellant. *Klingensmith v. Snell Landscape, supra,* 265 Md. at 662; *M. A. Realty v. State Roads,* 247 Md. 522, 527, 233 A. 2d 793 (1967); *State Roads Comm. v. Kuenne,* 240 Md. 232, 235, 213 A. 2d 567 (1965).

In this case, we believe that Dr. Kapiloff has shown that the admission of the two hearsay letters was prejudicial error. Both letters contained an opinion by the author, allegedly a vice president of a large reputable bank who was purporting to speak for the bank, on one of the ultimate issues in the case — whether Dr. Kapiloff was indebted to Locke and Jackson for architectural services rendered to him. The letter dated July 13, 1966 (exhibit 9) stated, "We also think you should pay Locke and Jackson the balance . . . that you owe them." Similarly, the letter of December 31, 1964, said, "It is our opinion, that you should pay Locke and Jackson at this time $6,179.53 representing $5,000 agreed to by you, plus $1,179.53" for additional services rendered.

---

**2.** Since we conclude that the letters were inadmissible under the hearsay rule, we need not consider Dr. Kapiloff's alternative argument concerning authenticity.

Further, the letters could have influenced the jury into believing that Dr. Kapiloff was not damaged by any mistakes that Locke and Jackson may have committed. The July 13, 1966, letter said that

"a list of concessions have been made by us which will total $130,757.75 over a twenty-year period
. . . .

\* &ast; \*

"We granted the enclosed list of concessions due to certain delays, omissions and errors that may have been made by the architects and the contractors. It is our opinion that you have been amply repaid by us for any errors that may have occurred."

The concessions totaling $130,757.75 may well have prejudiced the jury into believing that Dr. Kapiloff had received a windfall and was amply compensated for any injuries he may have suffered under the contract, and thus the comparatively small recovery of $4,679.53 plus interest sought by Locke and Jackson was merited. Indeed, the apparent generosity of the bank in assuming financial responsibility for the mistakes of others could have, in the jury's mind, reflected favorably on the bank, and lent weight to the unsworn testimony contained in the letters. This generosity was also shown by the passage in the July 13 letter stating:

"If you will recall, Morrow Bros. did not want to continue the construction of the building from the very start and, at that time, we assured them that we would stand behind the contract and see that they were paid promptly."

Moreover, the letters indicated that Dr. Kapiloff received a bargain in the contract with Locke and Jackson. The July 13 letter said that "[a]fter all you could hardly have plans for a three story building prepared for the amount you are obligated to pay."

Dr. Kapiloff was denied an opportunity to cross-examine the author of the letters. Such cross-examination could have explained the $130,757.75 "concessions" allegedly made by the bank as not being favors or unbargained for "concessions" but, as Dr. Kapiloff points out, "whether they represented a negotiated settlement whereby Dr. Kapiloff was subjected to great losses otherwise and these concessions were merely a form of assistance." Also, Dr. Kapiloff was denied the chance to challenge the basis for the author's opinion that Dr. Kapiloff was obligated to pay money to Locke and Jackson for their services.

We cannot agree with the contention by Locke and Jackson that any error in admitting the letters was rendered harmless by the additional evidence at the week-long trial. There was no other evidence having the same likely effect as the letters purportedly from a vice president of the bank. In no way could the letters be said to be cumulative. Here the letters were from a third party passing judgment on the ultimate issues in the case. Our review of the record reveals that the only testimony during the trial tending to establish the existence of a debt owed by Dr. Kapiloff came from Mr Locke. Thus, in light of the weight which the jury was likely to attribute to the apparently unbiased information and opinions contained in the letters, and the inability of Dr. Kapiloff to cross-examine the author, we believe that Dr. Kapiloff was prejudiced by the admission into evidence of the two letters.

> *Judgments reversed, and case remanded for a new trial.*
> *Appellees to pay costs.*

*Judges Smith and Orth dissenting:*

It is our opinion that the error here, in the circumstances surrounding the trial, was harmless. We would affirm the judgments.