JOHANNA HOSSFELDT *vs.* WILLIAM H. DILL and another.

December 17, 1881.

**Husband and Wife — Farm owned by Her and managed by Him — Ownership of the Product.**—A married woman is, by statute, empowered to hold and own real and personal estate, and to make contracts (except for the conveyance of her real estate) as though she was sole. She may, therefore, own or contract for a farm, and carry on the business of farming, and own the product; and no legal consequence of vesting the ownership of the product in the husband, so that it shall be subject to the process of his creditors; can properly be deduced solely from his living with her on the farm, working on it, and assisting to carry it on, without any agreement for compensation, employing some of his farming implements and animals in the work, and acting as her agent.

**Same—Question of Good Faith is for Jury.**—It is a question for the jury, in a case open to suspicion or question, to determine whether the business is being carried on in good faith by the wife as her enterprise, and at her expense and for her benefit, or is being transacted by the husband in her name as a cover to protect the product from his creditors.

**Levy and Sale on Execution—Conversion by Officer.**—Where property of a bulky character, incapable of immediate manual delivery, is assumed to be sold by an officer, pursuant to levy thereon under legal process, against the protest of the owner, as the property of another, to a purchaser who is left to take possession for himself, the owner is not remitted to contest the title with the purchaser, but may acquiesce in the sale for the sake of the remedy against the officer, and hold him for a conversion.

Appeal by defendants from an order of the district court for Winona county, *Mitchell, J.*, presiding, refusing a new trial.

*Lloyd Barber,* for appellants.

The defendants levied upon and sold only the right, title and interest of Max Hossfeldt in the wheat, and their acts did not amount to a conversion. *Lancashire Wagon Co.* v. *Fitzhugh,* 6 Hurlst. & Norman, 502; *Fernald* v. *Chase,* 37 Me. 289; *Mill* v. *Van Camp,* 41 Mich. 645; *Andrews* v. *Shattuck,* 32 Barb. 396; *Brown* v. *Pratt,* 4 Wis. 513; Cooley on Torts, 449; *Bryant* v. *Osgood,* 52 N. H. 182; *Wilson* v. *Powers,* 21 Minn. 193.

*Wilson & Gale,* for respondent.

CLARK, J.*   This action was brought for the conversion of 1,125 bushels of wheat and 600 bushels of oats. The defendants, Dill and Bogart, were respectively sheriff and deputy sheriff of Winona county, and they justified their interference with the grain under four executions in favor of as many different parties against Max Hossfeldt, the husband of the plaintiff. It appears from the statement of the case, that the grain was grown on a farm of 160 acres, which was owned by and in possession of Max Hossfeldt when he married the plaintiff, in 1874. She has, ever since the marriage, resided with her husband on the farm, and the title thereof remained in him up to the 6th day of February, 1877. At that time it was encumbered by mortgages to one Mathews, to the amount of $2,736, and Mr. Hossfeldt was indebted to C. C. Beck to the amount of over $1,100. In formal satisfaction of this debt, he conveyed the farm to Beck, by a deed of conveyance absolute in form, in which the plaintiff joined,—the consideration expressed therein being $3,884, the amount of the mortgages to Mathews and the indebtedness to the grantee; and Beck, as a part of the consideration for the conveyance, assumed and afterwards paid the mortgages to Mathews. Contemporaneously with the delivery of the deed, Beck executed to plaintiff his bond, whereby he obligated himself to convey the farm to the plaintiff upon the payment of $4,000 and interest thereon, according to the condition of four promissory notes executed by her. The plaintiff refused to join in the deed to Beck, unless the bond was given to convey the property to her. At the time of this transaction the indebtedness existed upon which at least three of the judgments against Mr. Hossfeldt were recovered. These uncontroverted facts appear from the evidence in the case.

Testimony was introduced tending to show that the plaintiff, from the time of the execution to her of the bond for a deed, carried on the farm in her own name and for her own separate benefit, and raised and owned the crops, including the grain in question; that her husband worked on the farm as before, without any agreement for his compensation; and used, in carrying it on, some of his farming im-

*Mitchell, J.. having presided at the trial in the district court, took no part in the decision of this appeal.

plements and animals, and transacted many matters of business incident thereto, such as the hiring and paying laborers, purchasing supplies, and marketing of crops; and that in these matters he acted under the direction of the plaintiff, and as her agent. There was also evidence tending to show that Mr. Beck furnished the plaintiff seed for the farm, and gave her orders and advanced cash for the purchase of things necessary to carry it on, and she paid over to him the proceeds of the crops, and that the money so paid was applied upon such advances and upon the notes.

Whether the deed to Beck, in connection with the bond to the plaintiff, was in substance and effect a mortgage, as claimed by defendants' counsel, or a conditional sale, as appears upon the face of the papers, is entirely immaterial to the question of the ownership of the grain. In the one case there was a transfer of the equity of redemption of the farm from Max Hossfeldt to the plaintiff, and in the other of the equitable ownership thereof, and such transfer was valid or not as against the execution creditors according to the intent with which it was made. If it was made with intent to defraud the creditors of Max Hossfeldt, they could reach the title to the land in an appropriate proceeding; but it does not follow that they can reach crops not in existence at the time of the fraudulent transfer, but grown on the land afterwards, as was the case with the grain in question. The character of this transaction, as regards its validity as against creditors, was competent in connection with other facts shown upon the question of the ownership of the grain, but only as bearing upon the question, and not conclusive upon it. *Sanders* v. *Chandler*, 26 Minn. 273.

A married woman is, by statute, empowered to hold and own real and personal estate, and to make contracts, (except for the conveyance of her real estate,) as though she were sole. She may, therefore, engage in any lawful business independently of her husband; she may own a farm, and carry on the business of farming, and own the product in her own right; and no legal consequence of vesting the ownership of the product in the husband can properly be deduced solely from his living with her on the farm, working on it without any agreement as to his compensation, employing some of his farming

implements and animals in the work, and acting as her agent. *Dayton* v. *Walsh*, 47 Wis. 113; *Gage* v. *Dauchy*, 34 N. Y. 293; *Carn* v. *Roger*, (Iowa,) 8 N. W. Rep. 629; *McIntyre* v. *Knowlton*, 6 Allen, 565. If such independent business relations of husband and wife afford unusual facilities for fraud, by means of the pretended transfer of property from one to the other, such consequence is necessarily incident to the enforcement of the statutory rights conferred upon married women.

Evidence was introduced of the facts and circumstances connected with the deed to Beck and the bond to the plaintiff, and concerning the manner in which the farm was thereafter carried on, in much detail; and the court below properly submitted it to the jury to say, upon all the testimony, whether these transactions were in good faith, or a mere cover to protect the land and the crops from the husband's creditors. The main features of these transactions were calculated to arouse suspicion, but we cannot say, as matter of law, that they were intended to cover up the property, and therefore constituted fraud. They might have been all done in good faith. The learned judge of the trial court carefully called the attention of the jury to their suspicious character, and cautioned the jury with much earnestness to sift the evidence and get to the bottom of the matter. The jury having found for the plaintiff, as there is sufficient evidence to support their verdict, this settles the matter so far as the ownership of the grain is concerned. *Knapp* v. *Smith*, 27 N. Y. 277.

It is claimed, however, on the part of the defendants, that there was no such interference with the possession of the wheat by them as to amount to a conversion. The defendants admit that they took and carried away 121 bushels of oats, and there is no controversy upon this point as to the oats. The wheat was sold on three of the executions only, and, with reference to each of them, the answer alleges that the sheriff, by his deputy, levied, by virtue thereof, on the right, title and interest which Max Hossfeldt had in and to all the crops growing on the land, while they were growing, and before the harvest; and that, after said growing grain had become ripe and been harvested upon the land, the sheriff, by virtue of such executions, sold all the right, title and interest which Mr. Hossfeldt had in

and to the wheat raised upon the land in the year 1880, being the same property levied on, for $601, and that he raised and owned all the crops and grain raised on the land in the year 1880. The answer also alleges that neither of the defendants ever took any part of the wheat into his possession, and never in any way interfered with or removed any part thereof, and never delivered, or undertook to deliver, any part of said wheat to any person, and only sold the right, title and interest of Max Hossfeldt therein.

The executions were introduced in evidence, with the sheriff's return by his deputy indorsed thereon, certifying that he had levied upon all the right, title and interest of the defendant in the writ in and to all the crop of wheat, oats and barley seeded and growing on the land, describing it. The sheriff is required to return only ultimate facts, and the language used indicates the filing of the certified copy of the execution and return under the provisions of Gen. St. 1878, c. 66, § 303. *Rohrer* v. *Turrill*, 4 Minn. 309, (407;) *Folsom* v. *Carli*, 5 Minn. 264, (333.) If nothing further had been done, a mere levy upon the interest of Mr. Hossfeldt in the growing crops, by filing a certified copy of the execution and return, might not have been such an interference with the crops as would amount to a conversion. But it appears from the evidence that the sheriff advertised the crops for sale to the highest bidder, stating in his advertisement that he had levied upon and would sell all the crops on the land, (not the interest of Mr. Hossfeldt therein,) and that, on the day advertised for the sale, the deputy sheriff appeared upon the land and proceeded with the sale. There is a conflict of testimony as to whether he offered the wheat, or the interest of Mr. Hossfeldt in the wheat; but, so far as anything depends upon this, the verdict of the jury determines the question of fact in favor of the plaintiff. The wheat was, at the time of the sale, being threshed. About 700 bushels had been threshed and put into the granary on the land, and the remainder was threshed the next day. There is evidence that the plaintiff, by her counsel, appeared at and before the sale, and asserted her ownership of the grain, and forbade the sale, and that the deputy responded that he had orders to sell it, and had bonds for his indemnity; and there is evidence that the deputy told the plaintiff that he

had to sell it, and she should sue the sheriff. The wheat was all sold together to Mr. Beck for $601, which he paid to the deputy, and some arrangement was made by the deputy as to the expense of the threshing. Mr. Beck testified that he told the plaintiff to take care of the wheat not threshed, and put it into the granary, which was done; and he also testified that he had disposed of two loads of the wheat, which was confirmed by the plaintiff.

The court gave the jury, among other instructions, the following: "The defendants say that they only assumed to levy on and sell the interest of Max Hossfeldt, but that they never took possession of or removed any of the wheat, and never have in any manner interfered with the plaintiff's possession, or assumed to exercise any acts of control over the grain. If that be true, then the plaintiff could not recover anything on account of the wheat, for it is incumbent on the plaintiff to show a taking or a conversion of her property by the defendants in order to recover. The acts of the sheriff would not and could not divest the plaintiff of the title or possession, unless her possession has been in some manner interfered with, or some dominion or control over it asserted, by the defendants. But the exercise of any acts of ownership or control over the property, inconsistent with plaintiff's ownership, is evidence of a conversion. I do not say it is sufficient, but it is evidence of conversion. It is conversion if one takes possession of the property of another, and undertakes without the owner's consent to dispose of it, as having the right of property in it. It is not necessary that there be a manual delivery to constitute a conversion—a manual taking away. The act of levying on and selling bulky property, incapable of being taken into manual possession, amounts to a conversion, although there has been no actual manual taking into possession. Under this statement of the law, it is for you to decide whether, under all the facts of the case, there was a taking and conversion of the wheat within the meaning of the law." The court also charged the jury, at the request of the defendants' counsel, that "the plaintiff cannot recover unless she shows that the defendants have in some way interfered with her possession of her property." The court refused to charge, at the request of the defendants' counsel, that "in this case, in any event, the plain-

tiff cannot recover anything for the wheat mentioned in the complaint." Exceptions were taken by the defendants to these instructions and refusal, except as to the instructions given at their request.

We think the instructions given—which of course must be taken in connection with the evidence in the particular case—were sufficiently favorable to the defendants, and that the instruction refused was properly refused. In Cooley on Torts, 448, the doctrine with respect to conversion is laid down as follows: "Any distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it, is a conversion. The action of trover being founded on a conjoint right of property and possession, any act of the defendant which negatives or. is inconsistent with such right, amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the. defendant. It is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's rights? If he does, that is in law a conversion, be it for his own or another person's use."

We have some doubts whether the rule is not too broadly stated as one of general application, but are inclined to the opinion that where property of a bulky character, incapable of immediate manual delivery, is assumed to be sold by an officer, in pursuance of a levy thereon under due process of law, against the protest of the owner, as the property of another, to a purchaser who. is left to take possession for himself, the owner is not remitted to contest the title with the purchaser, but may acquiesce in the sale, and look to the officer for a vindication of his rights. He has, and ought to have, a right to look to the party through whose interference with the property the contest is thrown upon him. The acts done by the officer would be a sufficient seizure and sale of property liable to the process, and, for the purpose of a remedy to the owner, it is no more than just that he should be allowed to treat the same acts as amounting to a conversion where the property is not liable to the process. The authorities are strongly to the effect that the facts in evidence are suf-

ficient to support a verdict of conversion. *Reynolds* v. *Shuler*, 5 Cow. 323; *Waid* v. *Gaylord*, 1 Hun, 607; *Connah* v. *Hale*, 23 Wend. 462; *Pease* v. *Smith*, 61 N. Y. 477; *Gibbs* v. *Chase*, 10 Mass. 125; *Williams* v. *Morgan*, 7 N. W. Rep. 541; *Gallagher* v. *Bishop*, 15 Wis. 303; *Webber* v. *Davis*, 44 Me. 147.

The defendant Bogart having testified on cross-examination, without objection, that he had taken a bond of indemnity, was asked by plaintiff's counsel, "How much of a bond did you take?" which was objected to by the defendants' counsel as immaterial. The court overruled the objection, and the defendants excepted. The witness answered that he took three bonds,—one $400, and the others for $500 each. The testimony would seem to be immaterial, but it was not of a character or degree of importance to mislead the jury, or influence the result. The witness had already testified that he had a bond of indemnity, and the additional statement of the amount of the indemnity in dollars was of trifling significance or importance.

Order affirmed.