### JENNY CAIN v. C. W. MEAD.[1]

November 9, 1896.

Nos. 10,286—(97).

**Fraud on Creditors—Verdict Sustained.**
> *Held*, that the verdict is sustained by the evidence.

**Receipt—Evidence.**
> The plaintiff testified that she paid a third party a certain sum of money for a specified purpose, and took his receipt therefor, which she produced and identified, and it was then received in evidence in connection with her testimony as to the fact of such payment. *Held*, its admission was not error.

[1] Reported in 68 N. W. 840.

Fraud on Creditors—Instructions.

Certain requests to charge the jury *held* to have been properly refused, for the reason that they would have been, if given, liable to mislead the jury as to the law applicable to the case.

Appeal by defendant from an order of the district court for Redwood county, Webber, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $334.25. Affirmed.

*John H. Bowers* and *Young & Mercer*, for appellant.

*Somerville & Olsen*, for respondent.

START, C. J. This action is for the conversion of a quantity of wheat and oats, of which the plaintiff alleged she was the owner. The defendant was the sheriff of the county of Redwood, and justified his taking of the grain by virtue of a levy thereon under an execution against the property of the plaintiff's husband, Fred Cain. The material issue on the trial was whether the grain was the property of the plaintiff or of her husband. There was a verdict for the plaintiff, and the defendant appealed from an order denying his motion for a new trial.

The first and important assignment of error is that the verdict is not sustained by the evidence.

It appears from the record that on September 13, 1890, the plaintiff's husband, with his family, entered into possession of the land upon which the grain was raised, under a contract for the purchase thereof, by the terms of which the then owner of the land agreed to convey the same to the husband, Fred Cain, or his assigns, upon being paid $4,000. This contract, on January 15, 1894, was assigned to Fred Cain, Jr., the son of the plaintiff and her husband, who on the same day assigned the contract to the plaintiff. The consideration recited in each assignment was the sum of $5,000. Neither the contract nor the assignments were ever recorded. It also appears that the husband had, prior to the assignment, paid on the contract the sum of $138, and no more. The record is silent as to the actual value of the husband's interest in the contract at the time of the assignment. He was at this time indebted to parties other than the vendor in the contract, including the debt for which the execution was levied. The only consideration claimed by the plaintiff for the assignment to her was a loan of $390, made some 11 years before, to

her husband. Prior to the assignment, and in the years 1892 and 1893, the husband sold his farm machinery, horses, and all other personal property to his son Fred Cain, Jr., without consideration, as the defendant claims. It does not appear from the evidence what the consideration of this transfer was.

The evidence on the part of the plaintiff tended to show that, after the making of the assignment to her, she carried on the farm in her own name, and for her own separate benefit, with the assistance of her son Fred Cain, Jr., with the use of the horses and machinery so transferred to him; that he was then some 24 years of age, and farmed for his own benefit another piece of land, near that claimed by his mother, with whom he boarded. It also appears from the record that a minor son also worked on the farm claimed by his mother, and, further, that the husband, who was a man of infirm health, assisted about the farm, doing chores, taking the milk to the creamery, and also securing seed grain and binding twine for the farm, but doing little or no field work. The grain in controversy was raised on the farm during the season of 1895.

The defendant claimed on the trial—and there was evidence tending to support the claim—that the transfer of the contract for the purchase of the land to the plaintiff, and the part she took in raising the grain thereon, was merely colorable, for the purpose of defrauding her husband's creditors. The validity of the transfer of the land to the plaintiff was not directly in issue, for the title to land is one thing, and the title to the crops raised on the land another, distinct matter. The transfer was good as between the parties, having never been set aside as fraudulent as to creditors; and if, in fact, the plaintiff, after the transfer of the land, in good faith farmed the land as her own, and raised the crops for her sole, separate benefit, they would belong to her, and not to her husband or his creditors, although the transfer of the land was in fact fraudulent as to the creditors. But if, in fact, the transfer was only colorable and void as to creditors, such fact, while not conclusive, would be evidence materially tending to show that her title to the crops was also only colorable. Hossfeldt v. Dill, 28 Minn. 469, 10 N. W. 781; Hartman v. Weiland, 36 Minn. 223, 30 N. W. 815.

It is unnecessary here to recite the further facts and circumstances disclosed by the evidence, which the defendant claims show that the

plaintiff was not, as against creditors, the owner of this grain. It is sufficient to say that the evidence is such that, had the verdict been for the defendant, it would be well supported by the evidence. But the weight of the evidence is not a question for us. There was evidence reasonably tending to support the verdict, which is not so manifestly and palpably against the weight of the evidence as to justify an appellate court in setting it aside.

The plaintiff testified that she bought the twine for the farm and paid for it, and produced the receipt of the seller, and further testified that it was given for the twine. The receipt was received in evidence over the defendant's objection. The receipt by itself would not be competent evidence of such payment. Ferris v. Boxell, 34 Minn. 262, 25 N. W. 592. But, in connection with her testimony, the receipt was competent evidence, as a part of the act of payment and in corroboration of the plaintiff's testimony as to such act.

The trial court did not err in permitting the plaintiff to answer, over the defendant's objections, the question: "On what part of this land did the wheat in question grow?" The answer disclosed the fact that it was on the part which was the husband's homestead at the time of the transfer of his interest in the land contract to the plaintiff. It is true, as defendant claims, that, if either the plaintiff or her husband was the legal owner of the land and the grain raised thereon, it was immaterial where the grain was grown; but the ownership of the grain, and incidentally the bona fides of the transfer of the land, were in issue; and the fact that a part of the land was the homestead of the parties, and the grain raised thereon, was an item of evidence on the question whether or not the transfer and the subsequent farming of the land by the plaintiff were simply a scheme to defraud the husband's creditors. The value of the evidence was for the jury.

The other assignments of error relate to the refusal of the court to give the defendant's sixteenth, seventeenth, and nineteenth special requests for instructions to the jury.

The sixteenth was given in all substantial particulars in the general charge. The court was not bound to repeat it.

The seventeenth request was in these words: "Where a sale is made in secret, and no means taken to apprise the public of the sale, these are facts which throw suspicion upon the transaction." If

a sale was made in secret, it might be a suspicious transaction. It would depend on its character, but the mere fact that the parties do not take means to apprise the public of the sale is not necessarily an act which throws suspicion on the transaction. On the contrary, if they take unusual pains to formally apprise the public of their business, it might be suggestive of fraud. The request was properly refused, for the reason that it was not a full and accurate statement of the law, and for the further reason that the evidence tended to show that the transfer of the land was made in the usual way, in the office of a real-estate agent, and hence the request was not applicable to this case.

The last request reads thus: "A conveyance by an insolvent debtor to his wife, whereby other creditors are prevented from enforcing payment of their claims, is presumptively fraudulent as to such creditors, and the burden is on one claiming through it to prove to the contrary." Whether this would be an accurate statement of the law in an action by an assignee or receiver in insolvency to set aside a deed by the insolvent to his wife, who was a creditor, as security or payment of his indebtedness to her, we need not decide, for the request is not applicable to this case, and would have been, if given, misleading. The request must be interpreted with reference to the evidence, which tended to show that the wife in this case was a creditor of her husband and that his indebtedness to her was the consideration for the transfer of his interest in the land to her. The words "other creditors," in the request, necessarily imply that the wife was a creditor; hence the jury might reasonably infer from the request that, although the transfer was made to pay plaintiff's claim, still it was presumptively fraudulent as to such other creditors, and that she must prove the transfer free from fraud in order to establish her title to the grain, which did not depend wholly on the bona fides of the land transfer. The request was both inaccurate and misleading, and was correctly denied.

Order affirmed.