MARION ELLIOTT ET AL. *v.* CHARLES
LESTER PATTERSON

[No. 584, September Term, 1970.]

*Decided June 23, 1971.*

The cause was argued before MURPHY, C. J., and ORTH and MOYLAN, JJ.

*William O. Goldstein* for appellants.

*John A. Buchanan,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

When Dr. Jerome Powell, a licensed Maryland chiropractor, had concluded testifying as to his examination

and treatment of appellants Marion Elliott and Thomas Creek, appellee Charles Patterson moved to strike all his testimony on the ground that it was beyond his field of professional competence because it related to the practice of physical therapy, a field in which he was unlicensed. The trial judge granted the motion to strike and shortly thereafter, finding no medical testimony which could properly be submitted to the jury, granted appellee's motion for a directed verdict. Appellants contend on appeal that the court erred in so ruling. We agree.

On November 22, 1968 appellant Marion Elliott, together with his passenger Thomas Creek, was driving east on Twin River Road in Columbia, Maryland when the westerly driven automobile of appellee attempted to make a left turn in front of the Elliott vehicle. A collision resulted. That evening both Elliott and Creek went to Dr. Powell.

Dr. Powell was appellants' only medical witness at the trial. In response to direct and cross-examination, he said his professional qualifications included graduation in 1950, after a four year course of study, from the National Chiropractic College in Chicago and a subsequent internship at the Chicago General Health Service. Dr. Powell testified that he became licensed to practice chiropractic and physical therapy in Maryland in 1951. He stated that much of his practice involved physical therapy, working with physical therapists, and physical therapy equipment. Dr. Powell testified with respect to his examination of appellant Elliott, stating that he found no fractures after taking x-rays, and that he gave him seventeen physical therapy treatments between November 1968 and March 1969. He further testified that he diagnosed Elliott's condition as "acute musculo-ligamentous strain of the cervical, dorsal, and lumbrosacral spine (*i.e.*, strain from the neck down the back side to the pelvic cavity) and contusion (*i.e*, bruising) of the left anterior chest." He testified that his findings also included distorted standing posture, neck muscle spasms, limited motion rotating, flexing and extending the neck, shoulder

blade pain, and back muscle rigidity. He said his physical therapy treatments of Elliott included moist heat packs, ultrasound, soft tissue massage, and active and passive exercise of the spine. Dr. Powell was permitted to give his opinion, based upon reasonable medical certainty, that Elliott's automobile injury was the cause of his medical condition, and that he had sustained a 15% permanent partial disability of the lower back and mild residual disability of the neck. Dr. Powell gave similar testimony with respect to his examination and treatment of appellant Thomas Creek.

During cross-examination, appellee brought out testimony tending to establish the following syllogism: (1) that "chiropractic," as defined by Maryland statute, is manipulation of the spine by any method not including drugs, surgery, obstetrics or osteopathy;[1] (2) Dr. Powell's treatment, which involved no correction of spinal dislocation, was not, technically speaking, "chiropractic" but was physical therapy; (3) therefore, since no "chiropractic" treatment was involved, Dr. Powell's testimony was incompetent and should be stricken.

In striking Dr. Powell's testimony, the trial court construed the following proviso within Section 504(b) of Article 43 of the Maryland Code:

> "* * * no chiropractors, licensed after June 1, 1949, or who were not attending a duly licensed college of chiropractic on such date and subsequently graduated therefrom, shall practice *physical therapy* until he shall have successfully

---

1. Section 504(c) of Article 43 (Health) of the Maryland Code provides:

    "Chiropractic is hereby defined to be a drugless health system, the basic principle of which teaches that disease is caused by interference with the transmission of nerve impulses. The practice of chiropractic is defined as diagnosis, the location of disaligned or displaced vertebrae of the human spinal column, the procedure preparatory to and the adjustment by hand of such misaligned or displaced vertebrae of the spinal column and its articulations, by any method not including the use of drugs, surgery, obstetrics, or osteopathy, nor any branch of medicine;
    * * *."

passed an examination before *said Board* on that subject, but any applicant may be licensed as a chiropractor without the right to practice physical therapy upon the successful passage of an examination on the subjects hereinbefore mentioned other than the subject of physical therapy." (Emphasis added.)

The trial court determined that the term "said Board" referred back to "physical therapy," and meant the Board of Physical Therapy Examiners established in Article 43, Section 604, rather than the Board of Chiropractic Examiners established in Section 499. The court ruled that even though Dr. Powell may have been licensed to practice physical therapy by the Chiropractic Board, he was not so licensed by the Physical Therapy Board, as required by law and, consequently, since his treatment of appellants was as a physical therapist, his testimony had to be stricken in toto.

We do not think that Section 504(b) is subject to the interpretation given it by the trial judge. The section is one of fifteen comprising a comprehensive statute regulating the practice of chiropractic in this State which is codified as Sections 499 through 514 of Article 43 under the subtitle "Chiropractic." The subtitle provides that the practice of chiropractic be regulated by the Board of Chiropractic Examiners. When the term "said Board" is used within the various sections of the "Chiropractic" subtitle, as it is repeatedly, it is obvious that it means the Board of Chiropractic Examiners. The term "said" as in "said Board" can only mean a before mentioned, already spoken of, appropriate antecedent. The term "physical therapy," standing by itself in Section 504(b), heretofore quoted, is not an appropriate antecedent for the term "said Board," as used in that section; the term "Board of Physical Therapy Examiners" would have to be added to Section 504(b) to force this meaning. We conclude that by no test imaginable could the Board of Physical Therapy Examiners, established in Section 604, be considered a before mentioned anteced-

ent of the term "said Board," as used in Section 504(b). To so hold would involve the impermissible exercise of inserting words into a statute to express an intention clearly at odds with that intended by the Legislature. *See State v. Blanken,* 11 Md. App. 460.

Under Sections 604-614, inclusive, of Article 43, the State Board of Physical Therapy Examiners is empowered to regulate the practice of "physical therapy." By the express terms of Section 614, it is provided that nothing in the subtitle shall be construed "to prohibit chiropractors from practicing physical therapy in their practice as chiropractors." [2]

Section 504(b) provides that persons desiring to obtain a license to practice chiropractic must stand for examination before the Board of Chiropractic Examiners. One of the basic science subjects upon which he must be examined is physical therapy. The section contemplates (with certain grandfather-type exceptions) that no chiropractor may practice physical therapy until he passes an examination on that subject, given by the Board of Chiropractic Examiners. Rule 17 of the Board provides that 270 hours of approved instruction in physical therapy will be required to permit persons holding the chiropractic license to qualify for a license to practice physical therapy.

As Dr. Powell was licensed to practice physical therapy by the Board of Chiropractic Examiners, and required no further license from the Board of Physical Therapy Examiners, his testimony should not have been stricken. As it constituted the only medical-type testimony adduced by the appellants, the error is manifestly prejudicial.

> *Judgment reversed; case remanded for a new trial; costs to be paid by appellee.*

---

2. Long prior to the creation of the Board of Physical Therapy Examiners, chiropractics engaged in the practice of physical therapy. The obvious purpose of Section 614 was to assure the chiropractic profession that it would not be subject to licensure control by any Board other than its own.