GEORGE EDWARD THOMAS *v.* NORRIS
H. OWENS ET AL.

[No. 1138, September Term, 1974.]

*Decided November 3, 1975.*

The cause was argued before MOYLAN and LOWE, JJ., and JOHN C. ELDRIDGE, Associate Judge of the Court of Appeals of Maryland, specially assigned.

*Patrick W. Hoffman,* with whom were *Blackwell, Miller, Markey & Hoffman* on the brief, for appellant.

*Richard T. Rombro,* with whom was *Louis Geller* on the brief, for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

This case presents issues concerning the propriety of admitting certain documentary and testimonial evidence, and the failure of the trial court to issue a "missing witness rule" instruction.

On the afternoon of April 6, 1971, Norris H. Owens, the plaintiff-appellee, was driving north on U. S. Route 301 in Prince George's County, Maryland. After the car in front of him stopped for a school bus which was discharging passengers in one of the southbound lanes, Owens brought his car to a halt. A few moments later he was struck in the rear by a vehicle owned and operated by the defendant-appellant, George Edward Thomas.

Owens filed suit in the Circuit Court for Prince George's County, seeking damages for the personal injuries sustained

in the collision. At the trial, the court (Meloy, J.) directed a verdict in favor of Owens on the issue of liability, and the jury assessed Owens's damages at $28,000. From a final judgment in favor of Owens for this amount, Thomas has appealed.

In this court, Thomas contends: (1) that the trial court erred in allowing into evidence an invoice "without requiring that it be presented through proper testimony"; (2) that the trial court erred in not granting the defendant's request to give a "missing witness rule" instruction in connection with plaintiff's failure to produce a particular physician as a witness; and (3) that the trial court erred in refusing to strike the testimony of a chiropractor because the treatment which he testified to providing allegedly exceeded his area of expertise.

(1)

Thomas asserts that the introduction of an invoice or bill over his objection constituted a violation of the hearsay rule. Owens testified that the day after the accident he was examined and treated at the United States Public Health Service Hospital in Baltimore, Maryland, and that he continued to receive treatments there "roughly every thirty days," although the total number of treatments was not specified. He further testified to having received a bill from the United States Department of Health, Education and Welfare for the treatment rendered by the Public Health Service Hospital. The bill was for $234.00, and was thereafter marked for identification.[1]

Owens next produced as a witness Dr. Stuart H. Brager whom he had consulted for an examination and evaluation to be used at trial. Over defendant's objection Dr. Brager

---

1. While not a "bill" or "invoice" in the conventional sense, both parties have treated the document as a normal invoice on this appeal, and we shall so regard it. Actually the document was a letter from the regional attorney for the Department of Health, Education and Welfare. The letter itemized the Department's claim, pursuant to 42 U.S.C. 2651, for medical care and treatment furnished to Owens by the Public Health Service Hospital. Section 2651 authorizes the federal government to recover from third party tortfeasors the reasonable value of medical treatment which it was obligated or authorized to render.

testified that the Public Health Service Hospital bill, according to Baltimore City medical standards, was fair and reasonable for the hospital visits and treatments. The plaintiff then offered into evidence the bill itself, claiming that it was admissible because Dr. Brager's testimony furnished independent evidence that the charge set forth was reasonable. The defendant objected on the ground that the bill was hearsay, but the court admitted the bill into evidence.[2]

In Maryland, before a medical bill can be admitted to prove the reasonableness of the amount charged, there must be other evidence that the charge set forth in the bill was reasonable. *Brooks v. Fairman,* 253 Md. 471, 475-476, 252 A. 2d 865, 867-868 (1969); *Metropolitan Auto Sales v. Koneski,* 252 Md. 145, 154, 249 A. 2d 141, 146 (1969); *Kujawa v. Baltimore Transit Co.,* 224 Md. 195, 208, 167 A. 2d 96, 102 (1961); *Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 243, 245 118 A. 648 (1922). The requirement of the cited cases concerning other evidence of reasonableness was met in the instant case, for Dr. Brager testified that the charge by the Public Health Service Hospital was reasonable.

However, Thomas contends that introduction of the invoice as evidence of the reasonable value of services provided constituted inadmissible hearsay.[3] Thomas claims that the invoice did not come within the business records exception to the hearsay rule because the requirement of the

---

**2.** While objected to below, Thomas does not on appeal question the admissibility of Dr. Brager's testimony. Instead, his only objection now is to the introduction of the invoice itself.

With regard to the invoice, the sole basis for the objection below was that the contents of the document constituted hearsay. The authenticity of the document, apart from the hearsay ground, was not challenged in the trial court. *See* McCormick, *Evidence* § 218, 543 (2d ed. 1972); 7 Wigmore, *Evidence* § 2130, 570 (3d ed. 1940) ("[A] writing purporting to be of a certain authorship cannot go to the jury as possibly genuine, merely on the strength of this purport; *there must be some evidence of the genuineness* (or execution) of it ....."). *Cf.* Smith and Whiting v. Easton, 54 Md. 138 (1880).

**3.** In Brooks v. Fairman, *supra;* Metropolitan Auto Sales v. Koneski, *supra;* Kujawa v. Baltimore Transit Co., *supra;* and Wash., B. & A. R. Co. v. Kimmey, *supra,* the hearsay issue was neither raised in the briefs nor decided. Therefore appellee's reliance on them, in his brief on this appeal, is misplaced.

business records statute that the writing be made in the regular course of business was not satisfied here by testimonial evidence.[4]

An invoice is hearsay evidence when offered to prove the reasonableness of the charges stated, as well as any other factual assertions expressly or impliedly contained therein. Thus, in *Weishaar v. Canestrale*, 241 Md. 676, 686, 217 A. 2d 525, 531 (1966), the Court upheld the exclusion of an invoice which was offered as the only evidence to prove the value of cargo destroyed in an accident on the ground that its admission would have violated the rule against hearsay.[5] However, despite the hearsay character of the medical invoice, under the circumstances of this case we believe that the invoice was properly admitted.

In *Morrow v. State*, 190 Md. 559, 59 A. 2d 325 (1948), the Court of Appeals considered the admissibility of a sales slip offered to prove the statements it contained. In that case, Morrow was tried on a charge of bookmaking alleged to have taken place in Maryland on August 9, 1947. Although he did not testify in his own behalf, Morrow attempted to prove through other witnesses that he was not in Maryland on that date. In support of Morrow's alibi, George Blake, a defense witness, testified that he accompanied Morrow to Union, South Carolina, on August 7, 1947. Blake testified that while in Union they had their car repaired on August 9, and he identified a sales slip which he said was obtained on the trip. The sales slip was dated August 9, 1947, and itemized a purchase of oil and spark plugs from a Union, South

---

**4.** The business records exception to the hearsay rule, Maryland Code (1974), § 10-101 of the Courts and Judicial Proceedings Article, provides in pertinent part:

"(b) *Admissibility.* — A writing or record made in the regular course of business as a memorandum or record of an act, transaction, occurrence or event is admissible to prove the act, transaction, occurrence, or event."

In the present case, the hospital records of Owens were admitted under a stipulation. The invoice was not included within this stipulation, and there was no *testimony* that it was made in the regular course of business.

**5.** In Weishaar v. Canestrale, *supra*, no contention was made that the invoice was admissible under the business records statute, and the Court therefore did not deal with the business records exception.

Carolina, service station. The trial court refused to admit the sales slip into evidence, and the Court of Appeals reversed.

Initially, *Morrow v. State, supra,* seemed to hold that the document was admissible on the theory that it was offered only to corroborate other testimony that Morrow had made a purchase in Union on August 9, for which he had received a sales slip. 190 Md. at 562. However, the Court then offered another basis for the admission of the sales slip. Turning to the business records act, Code (1974), § 10-101 of the Courts and Judicial Proceedings Article, formerly Code (1939), Art. 35, § 68, Judge Henderson stated for the Court (*id.* at 562-563):

> "The State contends that there was no foundation laid, in that there was no proof of regularity or business practice. We think no elaborate foundation is necessary to support an inference that the vendor, in giving a duplicate sales slip to his customer and keeping another for his record, was pursuing a regular business practice. It is a common practice for merchants to make out sales slips from which to post a ledger. To prove the practice in this particular case would probably require the testimony of out-of-state witnesses."

While a proper foundation must be laid for the introduction of evidence under the business records statute, *Snyder v. Stouffer,* 270 Md. 647, 652, 313 A. 2d 497, 500 (1974); *Hyman v. State,* 4 Md. App. 636, 642, 244 A. 2d 616, 618 (1968), as *Morrow v. State* indicates it is not always necessary that the foundation consist of testimonial evidence. The business records statute was enacted to liberalize the common-law rules, *Burroughs Int'l Co. v. Datronics,* 254 Md. 327, 347, 255 A. 2d 341 (1969), and it "created a broad exception to the hearsay rule," *Frush v. Brooks,* 204 Md. 315, 320, 104 A. 2d 624 (1954). "The rule in Maryland is that business records may be introduced, even though hearsay in nature, when the entry meets the test of 'necessity and circumstantial guaranty of trustworthiness.'"

*Burroughs Int'l Co. v. Datronics, supra,* at 348. Accordingly, the statute demands only that the writing be "made in the regular course of business" and at the time or within a reasonable time after the event of which the writing is a memorandum or record. While normally this foundation is shown by testimonial evidence, the statute sets forth no such requirement. At times a court may properly conclude from the circumstances and the nature of the document involved that the proffered document was made in the regular course of business. *Levine v. Beebe,* 238 Md. 365, 370, 209 A. 2d 67 (1965); *Morrow v. State, supra; see also Tellez v. Canton Railroad Co.,* 212 Md. 423, 432, 129 A. 2d 809 (1957); *Gordon v. State,* 14 Md. App. 245, 257, 286 A. 2d 833, 841 (1972).

Turning to the present case, issuing medical invoices which set forth charges for services rendered is a procedure normally pursued by hospitals or their representatives. In this case, moreover, the bill was sent by a government official pursuant to a scheme recognized by statute. Section 2651 of 42 U.S.C. provides for the Department of Health, Education and Welfare to recover for services furnished to patients in Public Health Service Hospitals from parties who may be liable for medical expenses incurred by the patients. The section necessarily contemplates, as a matter of regular business, communications or invoices from the Department itemizing the treatments and expenses incurred. Under these circumstances, we believe that there is a sufficient basis for concluding that the invoice was made in the regular course of business, and that it was sufficiently reliable and trustworthy to have been admitted.

As previously mentioned, *Morrow v. State* also seemed to rely on an alternative theory for holding the sales slip admissible. While not at all clear, the opinion appeared to suggest that the document was properly admitted for the "limited purpose" of corroborating independent testimony in the case. Thus, the Court stated (190 Md. at 562, emphasis supplied):

"We think the slip was admissible for the limited

purpose for which it was offered. It was offered *in corroboration of Blake's testimony* that the accused made a purchase in Union upon August 9th, and that he saw the slip delivered."

As Wigmore explains, there was at one time a broad exception to the hearsay rule for corroborative evidence, and it was allowable to use hearsay evidence to corroborate and supplement previous testimony on a disputed issue in a case. 5 Wigmore, *Evidence* § 1364 at 17 (3d ed. 1940). This rule existed in a limited form until the end of the 18th century, permitting a witness's own prior consistent statements to be used to corroborate his testimony, even where his credibility was not attacked. *Id.* at 17-18. *See also* the discussion in *McAleer v. Horsey*, 35 Md. 439, 465 (1872). Under present Maryland law, corroborating evidence which would otherwise be deemed hearsay and which would not fall within any recognized exception to the hearsay rule, can normally be used only for the non-hearsay purpose of rehabilitating a witness whose credibility has been attacked. *American Stores Co. v. Herman*, 166 Md. 312, 316, 171 A. 54 (1934); *Cross v. State*, 118 Md. 660, 671, 86 A. 223 (1912); *Gill v. Staylor*, 93 Md. 453, 468, 49 A. 650 (1901); *Bloomer v. State*, 48 Md. 521, 537 (1878); *McAleer v. Horsey, supra; Stocksdale v. Cullison*, 35 Md. 322, 326 (1872); *Washington Fire Insurance Co. v. Davison and Symington*, 30 Md. 91, 105 (1869); *Cooke v. Curtis*, 6 H. & J. 93, 94 (1823); *Harris v. State*, 11 Md. App. 658, 661, 276 A. 2d 406 (1971); McCormick, *Evidence* § 49, 108, n. 18 (1954).[6]

However, with respect to invoices and similar documents, there appears to have remained in a few jurisdictions the view that while such hearsay evidence is not independently admissible to prove the factual assertions contained in the writing, it may be used to corroborate independent testimony to the same effect. Thus, in *Pacific Gas & Elec.*

---

6. Maryland Code (1974), § 9-117 of the Courts and Judicial Proceedings Article, further limits use of corroborating evidence by providing that it is not competent for a party witness "to corroborate his testimony when impeached by proof of his own declaration or statement made to third persons out of the presence and hearing of the adverse party."

*Co. v. G. W. Thomas Drayage & R. Co.*, 69 Cal. 2d 33, 69 Cal. Rptr. 561, 567, 442 P. 2d 641, 647 (1968), Chief Justice Traynor stated for the Supreme Court of California:

> "Since invoices, bills, and receipts for repairs are hearsay, they are inadmissible independently to prove that liability for the repairs was incurred, that payment was made, or that the charges were reasonable. . . . If, however, a party testifies that he incurred or discharged a liability for repairs, any of these documents may be admitted for the limited purpose of corroborating his testimony . . ., and if the charges were paid, the testimony and documents are evidence that the charges were reasonable."

In *Morrow v. State* Judge Henderson seemed to recognize the same limited exception to the hearsay rule. *See also Cain v. Mead*, 66 Minn. 195, 198, 68 N. W. 840, 841 (1896); *but compare Myers v. State*, 137 Md. 496, 501, 113 A. 92 (1921).

Under the usual definition of hearsay, and where the evidence is not being used to rehabilitate a witness whose credibility has been impeached, the hearsay character of evidence does not change because it is used to corroborate other testimony. It is still being offered as evidence of the matters asserted therein, even though there is other evidence tending to prove the same thing.[7] And the modern standard categories of exceptions to the rule excluding hearsay evidence do not include an exception for "corroborative evidence." However, the Court of Appeals opinion in *Morrow v. State, supra*, seems to indicate that, even though a particular invoice does not come within a usual exception to the hearsay rule, there still may exist

---

7. Of course, in *Morrow v. State*, the sales slip was being offered to prove a somewhat different proposition than intended to be shown by the invoice in this case. In this case, the medical invoice was being offered to prove the reasonableness of the charges stated. In *Morrow v. State*, the sales slip was offered in evidence for its assertion that Morrow purchased several items on August 9, 1947, from a Union, South Carolina, gas station. In both instances, however, the writings were offered for the truth of their contents.

sufficient indicia of reliability and trustworthiness, when it corroborates other evidence to the same effect, for it to be admitted.[8]

The apparent alternate holding of *Morrow v. State* would seem to be applicable to the instant case. Unlike *Weishaar v. Canestrale, supra,* where the proffered bill was stated to be the "only evidence" of the value of the cargo, Owens testified that he was treated monthly at the Public Health Service Hospital, and that he received a bill for services rendered. Dr. Brager testified that the amount of the bill was fair and reasonable for the services rendered by the hospital. Both witnesses were available for cross-examination. The invoice itself, therefore, largely served to corroborate their testimony.

In sum, we believe that under the principles set forth in *Morrow v. State, supra,* the hospital bill was properly admitted in the present case. The medical invoice was admissible as an exception to the hearsay rule under the business records statute. It is common knowledge that hospitals regularly submit invoices to patients for the services rendered, and the invoice in question was issued by a government agency pursuant to a statute authorizing recovery from Thomas of the reasonable value of medical services rendered Owens. Additionally, under the apparent alternative holding of *Morrow v. State,* the invoice was admissible to corroborate the previous testimony of Owens and Dr. Brager.[9]

---

8. *Cf.* Dallas County v. Commercial Union Assur. Co., 286 F. 2d 388, 397-398 (5th Cir. 1961) (admitting a newspaper article for the truth of its contents not "as a 'business record,' nor as an 'ancient document,' nor as any other readily identifiable and happily tagged species of hearsay exception. It is admissible because it is necessary and trustworthy, relevant and material, and its admission is within the trial judge's exercise of discretion in holding the hearing within reasonable bounds").

9. Although the appellee's principal contention is that the invoice was admissible, he argues alternatively that even if it were not properly admitted, there was no prejudical error in light of the other testimony, and in view of the relatively small amount of the charges ($234.00) compared with the total jury verdict ($28,000). Since we conclude that the invoice was properly admitted, we do not reach the question of whether its admission was prejudicial. We do observe, however, that there would seem to be much

(2)

Thomas contends that the refusal of the trial court to instruct the jury as to the "missing witness rule" in connection with Owens's failure to produce Dr. Brumbaugh, a treating physician, was error. In *United Rys. & Elec. Co. v. Cloman*, 107 Md. 681, 69 A. 379 (1908), a similar contention was rejected by the Court of Appeals. In that case, the plaintiff produced as a witness her personal physician, rather than the doctor who had treated her after the accident. The defendant requested that the jury be instructed "[t]hat from the failure of the plaintiff to call as a witness Dr. R. H. Follis, the jury may infer that his testimony would be unfavorable to the plaintiff." (*Id.* at 683.) The Court disagreed (*id.* at 695):

"The mere fact that Dr. Follis . . . was not put on the stand by her, although he was summoned and in Court, ought not to prejudice her case. It frequently happens that a party to a suit does not deem it necessary to offer corroborative testimony, and in this case the defendant could have called Dr. Follis if it so desired."

Similarly, in *Jacobson v. Julian*, 246 Md. 549, 557, 229 A. 2d 108, 114 (1967), the Court held that an unfavorable inference should not be drawn where a party fails to produce witnesses whose "testimony at most, could have done no more than corroborate the testimony of the eye witnesses who were called."

Although the "missing witness rule" permits under certain circumstances an unfavorable inference where a party fails to produce a material witness within his control, as the Court of Appeals stated in *Critzer v. Shegogue*, 236

---

merit to the argument that the admission of this one particular document, in the context of the entire case, was not prejudicial error.

Moreover, even if the admission were to be deemed prejudicial error, a further question would be presented as to whether the proper remedy would be a new trial on the issue of damages or, instead, a reduction of the jury award by the amount of the invoice. *Compare* Metropolitan Auto Sales v. Koneski, *supra, with* Brooks v. Fairman, *supra*.

Md. 411, 421, 204 A. 2d 180, 185 (1964), to this general rule there are

> "qualifications and limitations. . . . However, we do not deem it desirable to attempt to set forth any precise rule with all of the exceptions thereto, for . . . it is often necessary for the trial judge to take into account all of the attendant facts and circumstances bearing upon the situation presented before him. . . . However, when it is shown why the witness was not called upon to testify and the reasons for not calling him are reasonable and proper, no inference that his testimony would be unfavorable is permitted."

Owens produced as witnesses Dr. Brager, a non-treating physician, and Dr. Tawney, a chiropractor. In denying the "missing witness" instruction the trial court reasoned that "the testimony of Dr. Brumbaugh, in the Court's opinion, would have been merely cumulative, and furthermore the defendant had ample access to the evidence via the discovery rule." We find no error in his denial of the requested instruction.

### (3)

Thomas contends that the testimony of Lewis S. Tawney, Sr., a chiropractor, concerning physical therapy he administered to Owens, was beyond his area of expertise, and that therefore his testimony should have been stricken. Dr. Tawney revealed that he had obtained his chiropractic license in Maryland in 1928 and has been practicing ever since, and that he has been president of the Maryland Board of Chiropractic Examiners since 1934. He further testified that he gave Owens 98 treatments, each one consisting of sound wave, infrared manipulation and massage.

The practice of chiropractic is defined by the Maryland Code (1957, 1974 Cum. Supp.), Art. 43, § 504 (c) as being

> "diagnosis, the location of disaligned or displaced vertebrae of the human spinal column, the

procedure preparatory and the adjustment by hand of such misaligned or displaced vertebrae of the spinal column and skeletal articulations, by any method not including the use of drugs, surgery, obstetrics or osteopathy, nor any branch of medicine; . . ."

Section 504 (b) of the Maryland Code (1957, 1971 Repl. Vol.), sets forth certain requirements for a license (subject to a grandfather clause applicable to Dr. Tawney), and further provides "that no chiropractors licensed after June 1, 1949 . . . shall practice physical therapy until he shall have successfully passed an examination before . . . [the State Board of Chiropractic Examiners] on that subject, but any applicant may be licensed as a chiropractor without the right to practice physical therapy upon the successful passage of an examination on the subjects hereinbefore mentioned other than the subject of physical therapy."

Thomas argues that § 504 (b) recognizes chiropractic and physical therapy as two distinct areas of expertise. Absent special evidence of expertise in the former field, he concludes that Dr. Tawney's testimony "exceeded his area of expertise as defined by the Maryland Code," and should have been stricken.

We disagree. Dr. Tawney received his license in 1928, and, by the terms of § 504 (b), he was fully licensed to practice physical therapy. Thomas could have cross-examined Dr. Tawney concerning his qualifications in this area, yet chose not to. Since Dr. Tawney "was licensed to practice physical therapy by the Board of Chiropractic Examiners, and required no further license," his testimony was properly admitted. *Elliott v. Patterson*, 12 Md. App. 341, 345, 278 A. 2d 431, 434 (1971).

*Judgment affirmed.*
*Appellant to pay costs.*